Department of Employment Security
No. 90-372

APPEAL OF T & M ASSOCIATES, INC.
(New Hampshire Department of Employment Security)

August 9, 1991

*Law Office of Laurence F. Gardner,* of Lebanon (*Laurence F. Gardner* on the brief, and *Mark T. Kremzner* orally), for T & M Associates, Inc.

*Decato Law Offices,* of Bristol (*Donald F. Hebert* on the brief and orally), for the claimant.

JOHNSON, J. The appellant, T & M Associates, Inc. (the company), appeals the decision of the appellate board of the department of employment security (DES) to reverse a DES appeal tribunal's denial of a company employee's claim for unemployment compensation benefits. The issue before us is whether the appellate board (the board) exceeded its jurisdiction, under RSA 282-A:65 (Supp. 1990), in reversing the appeal tribunal's (the tribunal) finding that the claimant voluntarily left her work without good cause attributable to her employer. *See* RSA 282-A:32, I(a); N.H. ADMIN. RULES, Emp 503.01. We affirm.

The claimant worked for the company from August 16, 1988, until September 14, 1989. After she left that job, she applied for unemployment benefits, alleging that the company's president had sexually harassed her. Specifically, she alleged that, from June until August 1989, he had on various occasions put his hands inside the sleeves of her short-sleeved sweater, put his hands up as if to grab her breasts, grabbed at the buttons inside the pocket of her skirt, rubbed her shoulders and back, and told her "how sexy" she looked. She alleged that when she protested some of these actions, he asked her, "Do you like your job, Elizabeth?" and, "What are you going to do Elizabeth, quit on me?"

After interviewing the company's president, the DES certifying officer concluded that the claimant had left work for good cause attributable to her employer, and granted her unemployment benefits. The company appealed this decision to the tribunal for *de novo* review, and an evidentiary hearing was held. Appearing before the tribunal were the company's president, his wife, his son, and three company supervisors. The claimant also testified. The president denied the claimant's allegations of unprofessional physical contact, but admitted that he told her once, "You look real sexy today, Lizzie

babe," and "probably" said (in his belief) jokingly, "Do you like your job, Elizabeth?" or "What are you going to do, Elizabeth, quit?" In addition, an employee of the company testified that the president had once "put up his hands as if to grab [the claimant's] breasts and said to her, hey Lizzie babe."

The claimant re-asserted her allegations at the hearing as to sexual contact and the president's statement to her, and confirmed the incident testified to by the employee. Although she agreed with the other witnesses that non-sexual contact was common among most of the company's principals and workers, she maintained that the president's actions were sexual in nature, and harassing.

The president's son, who is one of the company's principals and was the claimant's supervisor, testified that she eventually complained to him about his father's conduct. The son then told his father about the claimant's accusation on September 5, 1989, and as a result the company's five principals decided to "keep hands off Elizabeth." The next day, the president and another principal met with the claimant. The president testified that "she said something to the effect, you won't put your hands in my pockets anymore, or something like that. And I said, Elizabeth, if I've offended you in any way, I apologize." At the hearing the president denied ever putting his hands in the claimant's pockets and explained his apology as a "general" one "for any offense that I might have done to her."

The claimant testified that from the date of this meeting until the time she left, eight days later, the president did not touch her, but rather avoided her. The president confirmed this. In addition, the claimant testified that after the meeting she failed to receive the assistance from a principal that she needed to complete a project, and that another principal continually interrupted her to inquire when the project would be completed. She found the work environment, at this time, "extremely unnerving," and she then voluntarily left the employment of the company.

The tribunal ruled against the claimant, finding that "substantially all of the testimony obtained in the hearing by witnesses appearing at the request of the claimant contradicted the claimant's testimony on matters of the president's *physical acts* with the claimant." (Emphasis added.) No finding was made as to the claimant's allegations of verbal sexual harassment. Although the tribunal found the claimant's description of her last days of work credible, it found that "the final actions that claimant attests caused her to leave her job were not of sufficient magnitude to warrant the actions the claimant took

in voluntarily leaving her work in so far as she could then expect to be found eligible for the receipt of unemployment benefits."

The claimant appealed the tribunal's decision to the board, and won a reversal. The board stated in its decision that "[t]he facts in this case do not support the findings of the Appeal Tribunal Chairman," because "[t]he testimony of [the claimant] as contained in the record and corroborated by other witnesses establishes clear violation of both state and federal law regarding unprivileged contact and sexual harassment." The company then appealed to this court.

The relevant statutes and regulation are as follows. RSA 282-A:32, I(a) reads: "An individual shall be disqualified for benefits [if] he *left his work voluntarily without good cause* in accordance with rules of the commissioner." (Emphasis added.) The applicable DES rule states, in pertinent part: "An individual shall be considered to have left his work voluntarily without good cause if of his own choice or volition he terminates the employee-employer relationship for a reason which is not attributable to the employer." N.H. ADMIN. RULES, Emp 503.01. Finally, RSA 282-A:65 (Supp. 1990) states:

> "The appellate board shall not substitute its judgment for that of the commissioner or appeal tribunal as to the weight of the evidence on questions of fact, or as to the prudence or desirability of the determination. The appellate board shall reverse or modify the decision or remand the case for further proceedings only if the substantial rights of the appellant had been prejudiced because the findings, inferences, conclusions, or the decision is:
>
> . . .
>
> III. Affected by reversible error of law . . . ."

On appeal, the company argues that the board exceeded its authority by "substitut[ing] its judgment for that of the . . . tribunal as to the weight of the evidence on questions of fact." Moreover, the company maintains that the facts found by the tribunal support its conclusion that the claimant left her work without good cause attributable to her employer. However, we agree with the claimant and the board that the tribunal's decision was "[a]ffected by reversible error of law." *Id.*

In *Appeal of City of Franklin*, 125 N.H. 761, 485 A.2d 295 (1984), we articulated the applicable review standard:

> "The question on appeal is whether the claimant's voluntary termination was for a cause attributable to the employer.

> Our review is confined to the record, and we cannot substitute our judgment as to the weight of the evidence on questions of fact for that of the appeal tribunal. However, we will reverse the appeal tribunal where its conclusions are affected by an error of law."

*Id.* at 762–63, 485 A.2d at 296–97 (citations omitted). For a voluntary termination to be considered "attributable to the employer," N.H. ADMIN. RULES, Emp 503.01, it must, at the very least, have "some connection with or relation to the employment," *Nashua Corp. v. Brown,* 99 N.H. 205, 207, 108 A.2d 52, 54 (1954).

■ The company argues that the "some connection with or relation to the employment" standard is vague, and tends to unduly favor claimants. As a further refinement, the company urges us to adopt the test set forth in *Jensen v. Siemsen,* 794 P.2d 271 (Idaho 1990): "whether a reasonable person would consider the circumstances resulting in a claimant's unemployment to be real, substantial and compelling." *Id.* at 274. We agree that the standard employed in *Nashua Corp. v. Brown* is by itself insufficient, but we have already adopted a "reasonableness" test to evaluate unemployment claims. In *Appeal of City of Franklin,* we stated:

> "A claimant is not required to exhaust every available remedy within the employer's organization before voluntarily terminating the employment on account of the employer. A claimant need only have acted reasonably under the circumstances of the employment. *Therrien v. Maine Employment Sec. Com'n,* 370 A.2d 1385, 1389 (Me. 1977) (employee's beliefs and behavior as justifying good cause in voluntary quit must be measured by reasonableness under all the circumstances)."

*Appeal of City of Franklin, supra* at 764–65, 485 A.2d at 298. For clarity, we restate the appropriate analysis as follows: (1) the reason for the employee's termination must have some connection with or relation to his or her employment; and (2) the employee's decision to terminate must have been reasonable under the totality of the circumstances.

■ Turning to the case before us, our task is to determine "whether as a matter of law there was any evidence presented to the Appeal Tribunal upon which [it] could reasonably have decided as [it] did." *Hewett v. Riley,* 94 N.H. 460, 461, 55 A.2d 470, 471 (1947); *see also* RSA 282-A:67, V(d) (Supp. 1990) (this court shall reverse deci-

sion of tribunal only if it is "[c]learly erroneous in view of the substantial evidence on the whole record"). Where the testimony of the claimant and the employer is contradictory, we must accept the tribunal's decision as to whom to believe. However, where a claimant's testimony not only is uncontradicted, but is admitted to and acknowledged by the employer's president, as in this case, the tribunal may not reject such testimony.

At the hearing before the tribunal, the president admitted telling the claimant, "You look real sexy today, Lizzie babe." The president also acknowledged that he "probably" asked the claimant, "Do you like your job, Elizabeth?" and, "What are you going to do Elizabeth, quit?" There is no question that the record reveals that the claimant complained about the president's verbal statements to her of a sexual nature. She testified that on one occasion she stated, "[P]lease don't say that, don't make remarks like that, cut that out." The president testified that on one occasion, after he had given her a verbal "shot," she protested, "cut it out in a yell type of voice . . . it was a protest in my estimation of a high decibel." Admissions by the company president of verbal communications of a sexual nature, followed by protests from the claimant, and taunts by the president concerning her job, cannot be simply ignored by the fact finder.

Applying the two-part test set forth above, we hold first that the claimant left the company for a reason which was work-connected. See Appeal of City of Franklin, 125 N.H. at 765, 485 A.2d at 298. The tribunal found that she quit because of the way the company president and her supervisors treated her. Therefore, the claimant's termination had "some connection with or relation to the employment," Nashua Corp. v. Brown, 99 N.H. at 207, 108 A.2d at 54, and was not the result of outside factors, see id. (married employee's voluntary termination of employment to join spouse in another State is not termination attributable to employer); Putnam v. Dept. of Employment Security, 103 N.H. 495, 497–98, 175 A.2d 519, 520–21 (1961) (employee's loss of available transportation to work, where employer was under no obligation to provide transportation, is not termination attributable to employer).

Second, we hold that the claimant's decision to terminate was reasonable under the totality of the circumstances. Appeal of City of Franklin, 125 N.H. at 764–65, 485 A.2d at 298. The uncontroverted testimony was that the company's principals treated the claimant in a different manner after she complained to the president's son about his father's sexual harassment. One supervisor became uncooperative, and another harassed her regarding a work project. This sud-

den change in the principals' behavior clearly created a hostile work environment for the claimant. We find that the company created a working environment hostile enough to compel a reasonably prudent woman to terminate her employment. *See Appeal of City of Franklin*, 125 N.H. at 764–65, 485 A.2d at 298.

■ In reviewing the decision of the tribunal, there were good and sufficient reasons for the claimant to terminate her employment. Accordingly, we hold that, as a matter of law, the claimant's termination of employment was for a cause attributable to her employer, and that the DES board correctly overturned the tribunal's denial of unemployment benefits.

*Decision of appellate board affirmed.*

All concurred.