Helen M. GODFREY, Patrick J. Godfrey

v.

PERKIN–ELMER CORPORATION,
Robin Wilson, John Eldridge,
Marlin Braun.

Civ. No. 91–350–D.

United States District Court,
D. New Hampshire.

May 26, 1992.

David L. Nixon, Manchester, N.H., for plaintiffs.

Edward M. Kaplan, Concord, N.H., for defendants.

## ORDER

DEVINE, Chief Judge.

In this civil action, plaintiff Helen M. Godfrey [1] seeks redress for alleged acts of sexual harassment on the part of defendant Perkin–Elmer Corporation and three of its employees, Robin L. Wilson, John W. Eldridge, and Marlin A. Braun. Plaintiff complains in Count I that defendants' actions were unlawful under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* [2] Additionally, she claims under state law that defendants' actions constituted wrongful discharge (Count II), the intentional and negligent infliction of emotional distress (Count III), and slander (Count IV). Plaintiffs seek enhanced compensatory damages (Count VI), and Mr. Godfrey seeks to recover for loss of consortium (Count V). Jurisdiction for Count I is predicated upon the existence of a federal question. 28 U.S.C. § 1331. Plaintiffs assert that jurisdiction over the state law claims is proper under the doctrine of pendent jurisdiction.

1. Helen Godfrey's husband, Patrick J. Godfrey, also a plaintiff herein, seeks damages based upon his loss of consortium claim. For the sake of clarity, however, the court's reference to "plaintiff" includes only Mrs. Godfrey unless otherwise indicated.

2. 42 U.S.C. § 2000e–2(a)(1) (West 1981) provides in relevant part that
 [i]t shall be an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex....
 While the statute does not explicitly so provide, it is well established that sexual harassment constitutes discrimination on the basis of sex. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 897 (1st Cir.1988).

Before the court is defendants' motion to dismiss plaintiffs' state law claims for lack of subject matter jurisdiction,[3] or, alternatively, for failure to state a claim upon which relief can be granted. Rule 12(b)(6), Fed.R.Civ.P.

## I. Background

Plaintiff was interviewed for the position of "Senior Secretary" at Perkin–Elmer by defendant Braun, and was subsequently hired by him to work in the Merrimack, New Hampshire, branch office beginning on or about March 6, 1989. At that time, she was the only female employee and one of only three employees at that small office. The other two employees were Braun, a Sales Engineer, and Wilson, a Manager of Vacuum Products. Both Braun and Wilson were authorized by the company to assign tasks to plaintiff and to supervise her. She was required to accept assignments and supervision from both of them. Defendant Eldridge joined the staff at this office a year later, in March 1990.

Plaintiff's allegations of sexual harassment as to both Wilson and Eldridge are, for the most part, identical. She contends that their complained-of conduct started when she was introduced to each of them and continued throughout the course of her employment at Perkin–Elmer. Specifically, she charges that, in a sexually suggestive, demeaning, and socially inappropriate manner, they stared at her and made statements to her which had no connection with her duties or the business of the company. She also contends that they, repeatedly and intentionally, attempted to engage her in conversations of an inappropriate and sexual nature. Furthermore, they confined her to her desk area by sitting and standing inordinately close to her, often in a sexually suggestive manner, which was not necessary for any work-related business and which prevented her from completing her assignments. Plaintiff also alleges that Wilson informed her that she was expected to accompany him to lunch, alone, and that it was part of her duties as his secretary to do so.

Both Wilson and Eldridge ignored plaintiff's requests to cease their allegedly unreasonable, sexually suggestive, demeaning, and socially inappropriate behavior. And, despite repeatedly advising defendant Braun and other Perkin–Elmer personnel that she was being harassed by Wilson and Eldridge, Perkin–Elmer made no attempt to investigate her complaints or to ensure that the harassment ceased. Plaintiff asserts that because of the sexual harassment to which she was subjected she found it impossible to continue at the Perkin–Elmer office. Upon her physician's advice, she stopped working on June 28, 1990, and ultimately she resigned her position effective May 10, 1991. On August 13, 1991, having received a Notice of Right to Sue from the Equal Employment Opportunity Commission (EEOC), she filed the instant action.

## II. Subject Matter Jurisdiction

■ Resting upon a split of authority, the parties debate at length the issue of whether this court can or should exercise pendent jurisdiction over state law claims in the context of a Title VII action. While confident that "Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination," *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 48, 94 S.Ct. 1011, 1019–20, 39 L.Ed.2d 147 (1974), the court finds no need to enter this jurisdictional fray, in light of the recent enactment of the Judicial Improvements Act of 1990, Pub.L. No. 101–650, 104 Stat. 5113 (1990). Although not raised by the parties, the question is now one of "supplemental" rather than "pendent" jurisdiction, and is governed by 28 U.S.C. § 1367 (West Supp. 1992). *See Promisel v. First American Artificial Flowers, Inc.*, 943 F.2d 251, 254 (2d Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992); *Sinclair v. Soniform, Inc.*, 935 F.2d 599, 603 (3d Cir.1991). Moreover, as section 1367 applies to any civil action filed on or after December 1, 1990, it is applicable to the instant action.

---

**3.** *See* Rule 12(b)(1), Fed.R.Civ.P.

The new federal statute provides, in relevant part:

> Except as provided in subsections (b) [actions founded solely on diversity] and (c) [court's discretionary power to decline] or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). By using the "case or controversy" standard, Congress intended supplemental jurisdiction to go to "the constitutional limit, to which it appeared to be carried in the *Gibbs*, case."[4] David D. Siegel, *Practice Commentary, The 1990 Adoption of § 1367, Codifying "Supplemental" Jurisdiction*, at 232 (West Supp. 1992). *See also* 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3567.3 at 39 (Supp.1992) ("The legislation as ... adopted ... ratifies and incorporates the constitutional analysis the Supreme Court made in the *Gibbs* case.").

■ As a threshold matter, defendants concede that Title VII has no express provision limiting federal court jurisdiction over state law claims. That being so, the court concludes that plaintiff's claims pass muster under *Gibbs*. Certainly, plaintiff's sexual harassment claim under Title VII provides the basis for federal subject matter jurisdiction. *Chamberlin v. 101 Realty, Inc.*, 915 F.2d 777 (1st Cir.1990); *Rosa, supra*, 726 F.Supp. at 352. Furthermore, plaintiff's federal and state claims are all based upon the same alleged discriminatory acts and, given the duplication and waste of judicial resources that separate trials would entail, plaintiff would be expected to try them all in a single proceeding. *Id.* at 352–53. Accordingly, the court finds that it has the power to exercise supplemental jurisdiction over plaintiff's state law claims, subject only to the narrow circumstances detailed by Congress.[5] *See, e.g., Cedillo v. Valcar Enterprises & Darling Delaware Co.*, 773 F.Supp. 932, 939 (N.D.Tex.1991) ("If the claim is within the court's supplemental discretion, the court must exercise such jurisdiction unless one of the four categorical exceptions in § 1367(c) is satisfied").

■ After careful consideration, the court is satisfied that none of the grounds upon which it could decline to hear plaintiff's state law claims are relevant. As the Title VII claim has not been dismissed, section 1367(c)(3) has no application to the present facts. Furthermore, plaintiff's state claims do not predominate over her Title VII claim. 28 U.S.C. § 1367(c)(2). Under the statute, clauses (1) and (2) over-

---

**4.** Under *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), in order for a federal court to have the power to hear state law claims, the federal claim must be sufficient to confer subject matter jurisdiction on the court. *Id.* at 725, 86 S.Ct. at 1138; *Newman v. Burgin*, 930 F.2d 955, 963 (1st Cir.1991). Additionally, the state and federal claims must derive from a common nucleus of operative fact, and plaintiff's claims must be such that he would ordinarily be expected to try them all in one judicial proceeding. *Gibbs, supra*, 383 U.S. at 725, 86 S.Ct. at 1138; *Rosa v. Burns & Roe Services Corp.*, 726 F.Supp. 350, 352 (D.P.R. 1989) (citing *Gibbs* ).

**5.** Section 1367(c) provides that

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

"Rather than constitute a separate category for declining supplemental jurisdiction, distinct from the first three, the language of clause (4) indicates that all declinations of supplemental jurisdiction should be reserved for situations in which there are 'compelling reasons.' " Seigel, *supra*, at 236 (citing Committee on the Judiciary, H.R.Rep. No. 734).

lap, as they have under prior "caselaw-based 'abstention' doctrines," Siegel, *supra*, at 235, with clause (2) similar to the line of abstention cases that began with *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). *Id.* However, *Burford* abstention is generally not warranted unless the case is one in which federal court intervention will unnecessarily threaten to impede the ongoing administration of a state regulatory system. *Trailer Marine Transport Corp. v. Rivera–Vazquez*, 931 F.2d 961, 964 (1st Cir. 1991). Here, there is no comprehensive plan of state regulation at issue.

Lastly, plaintiff's state claims do not present any novel or complex issues of state law. 28 U.S.C. § 1367(c)(1). For the most part, the issues presented are settled and are areas with which the court has previously grappled. *See e.g., Chamberlin v. 101 Realty, Inc.*, 626 F.Supp. 865, 867–68 (D.N.H.1985) (wrongful discharge); *Orono Karate, Inc. v. Fred Villari Studio of Self Defense, Inc.*, 776 F.Supp. 47, 50–51 (D.N.H.1991) (intentional and negligent infliction of emotional distress); *DeMeo v. Goodall*, 640 F.Supp. 1115, 1118 (D.N.H. 1986) (enhanced compensatory damages); *Catalfo v. Jensen*, 628 F.Supp. 1453 (D.N.H.1986) (defamation). Accordingly, the court exercises its supplemental jurisdiction over Counts II, III, IV, and VI.

█ Before leaving the jurisdictional issue presented herein, the court turns its attention to Count V, Mr. Godfrey's derivative claim for loss of consortium, which renders him a pendent party plaintiff. Prior to the enactment of the legislation creating supplemental jurisdiction under 28 U.S.C. § 1367, much ado was made over this generally disfavored doctrine.[6] Currently, however, "the last sentence of subdivision (1) of § 1367 explicitly provides that 'supplemental jurisdiction shall include

claims that involve the joinder or intervention of additional parties.'" Siegel, *supra*, at 233 (quoting § 1367). "With that last sentence, *Finley* and *Aldinger* are overruled and pendent party jurisdiction is allowed...." *Id. See also Ryan v. Cosentino*, 776 F.Supp. 386, 389 (N.D.Ill.1991) (*Finley* overruled by § 1367(a)). Accordingly, the court exercises its power of supplemental jurisdiction over Count V of the within action.

### III. Failure to State a Claim

When a complaint is challenged pursuant to Rule 12(b)(6), Fed.R.Civ.P., the court is "bound by the principle that a civil complaint ... should not be jettisoned for failure to state an actionable claim unless it plainly appears that plaintiff can prove no set of facts ... which would entitle her to recover." *Roth v. United States of America*, 952 F.2d 611, 613 (1st Cir.1991) (citations omitted). Factual allegations must be accepted as true, *id.*, "indulging every reasonable inference in plaintiff's favor." *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir.1990) (citations omitted). It is well settled that the grounds for a Rule 12(b)(6) dismissal must rest solely upon the pleadings. *Fleming v. Lind–Waldock & Co.*, 922 F.2d 20, 23 (1st Cir.1990). With these standards in mind, the court examines plaintiff's state law claims.

### A. Count II—Wrongful Discharge

Plaintiff alleges that defendants' actions created a hostile work environment and that she was constructively discharged from her employment with Perkin–Elmer because she refused to tolerate and submit to sexual harassment.

---

**6.** *See Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) (rejecting doctrine of pendent party jurisdiction); *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) (same); *Rodriguez v. Comas*, 888 F.2d 899, 905 n. 23 (1st Cir.1989) (itemizing cases forbidding pendent party plaintiffs when the federal action was brought under § 1983); *Marshall v. Southwestern Bell Tel. Co.*, 760

F.Supp. 113 (E.D.Tex.1991) (holding that Title VII does not permit district court to exercise pendent party jurisdiction over husband's claim for loss of consortium). *But see Rodriguez, supra*, 888 F.2d at 903–06 (in the context of a § 1983 action, First Circuit affirmed lower court's retention of spouse as a pendent party plaintiff based on her state law claims, distinguishing *Finley* ).

In New Hampshire, absent a written employment contract, legislation, judicial exception, or a collective bargaining agreement, employment such as plaintiff's is deemed to be employment at will. *Panto v. Moore Business Forms, Inc.*, 130 N.H. 730, 739, 547 A.2d 260, 267 (1988). A judicial exception, however, provides that recovery may be had for wrongful discharge if the employee proves the defendant was motivated by bad faith, malice, or retaliation, and the discharge resulted because the employee performed an act that public policy would encourage, or refused to do something that public policy would condemn. *Cloutier v. Great Atlantic & Pacific Tea Co.*, 121 N.H. 915, 921–22, 436 A.2d 1140, 1141 (1981).

While the New Hampshire Court has not spoken directly to the issue of what constitutes constructive discharge, many other state and federal courts have done so, frequently in the context of an alleged Title VII violation. Almost universally, these courts are guided by a "reasonable employee" standard.

"Constructive discharge occurs when an employer renders an employee's working conditions so difficult and intolerable that a reasonable person would feel forced to resign." *Seery v. Yale–New Haven Hospital*, 17 Conn.App. 532, 554 A.2d 757, 761 (1989) (citing *Neale v. Dillon*, 534 F.Supp. 1381, 1390, *aff'd* 714 F.2d 116 (2d Cir. 1982)). *Accord Atlantic Richfield Co. v. D.C. Comm'n on Human Rights*, 515 A.2d 1095, 1101 (D.C.App.1986) (constructive discharge occurs when employer deliberately makes working conditions intolerable and drives employee into an involuntary quit, with no requirement that employer intended to force the employee to leave, or that the employee stay in an intolerable workplace for a particular period, as courts focus instead upon the existence of the aggravating conditions which would lead a reasonable person to resign).

The federal standard is consistent with that of the states. As expressed by the First Circuit, " 'the trier of fact must be satisfied that the ... working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.' " *Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559, 561 (1st Cir.1986) (involving Age Discrimination in Employment Act) (quoting *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119 (1st Cir.1977)). This standard is an objective one which focuses upon the reasonable state of mind of the employee. *Id.*

"Through the use of constructive discharge, the law recognizes that an employee's 'voluntary' resignation may be, in reality, a dismissal by the employer." *Seery, supra,* 554 A.2d at 761 (citation omitted). This is the exact issue considered by the New Hampshire Supreme Court in *Appeal of T & M Assoc. (NHDES)*, 134 N.H. 617, 598 A.2d 209 (1991). While *T & M Associates* was an unemployment benefits case, the court clarified a voluntary termination issue highly analogous the instant one, and did so utilizing its previously adopted two-part "reasonableness" test. *Id.* at 621, 598 A.2d at 211. The court reiterated

the appropriate analysis as follows: (1) the reason for the employee's termination must have some connection with or relation to his or her employment; and (2) the employee's decision to terminate must have been reasonable under the totality of the circumstances.

*Id.;* 598 A.2d at 212. This standard indisputably mirrors the prevailing constructive discharge standard in other jurisdictions.

Having carefully explored the issue, the court finds that plaintiff has alleged sufficient facts to meet the requirements of constructive discharge as they are consistently expressed. Taking plaintiff's alleged facts as true, the court concludes, under the "reasonableness" test reiterated in *T & M Associates*, that plaintiff's resignation was directly related to the hostile work environment which existed, and finds that her decision to leave could be viewed as reasonable under the totality of the circumstances. Working conditions at Perkin–Elmer could have been intolerable enough to force any reasonable woman to involuntarily resign.

■ Additionally, however, to state a claim for wrongful discharge, plaintiff must satisfy the two-part test of *Cloutier*. In that regard also, the court finds that plaintiff has met her burden under New Hampshire law. She reported the alleged harassment by Wilson and Eldridge to Braun. The company's subsequent inaction, specifically, its lack of investigation of her claims and its failure to remediate the discriminatory practices, would seem sufficient to meet the first prong, the bad faith element of the test.[7]

■ Regarding the second prong of the test, defendants erroneously argue that a wrongful discharge claim cannot be premised upon a public policy embodied in a statute which provides a remedy for its violation. Defendants contend that the availability of remedies under Title VII precludes a wrongful discharge action premised on sexual harassment. Such an argument, however, ignores the clarification in *Cloutier* that the public policy exceptions may be either statutory or nonstatutory in nature. *Cloutier, supra,* 121 N.H. at 921–22, 436 A.2d at 1141; *Vandergrift v. American Brands Corp.,* 572 F.Supp. 496, 497–99 (D.N.H.1983). Accordingly, the court finds and rules that plaintiff states a claim for wrongful discharge against Perkin–Elmer.[8]

B. Count III—Intentional and Negligent Infliction of Emotional Distress

Plaintiff brings this count against the individual defendants. However, as none of the specific factual allegations of sexual harassment upon which Count III is premised are made as to defendant Braun, the

court grants the motion to dismiss Count III solely as to Braun.

Defendants contend that plaintiff has only pled a cause of action for intentional infliction, but that even if it had been pled, the negligent infliction claim would be barred by RSA 281–A:8. Defendants further contend that plaintiff has not alleged conduct which states a claim for intentional infliction of emotional distress, that she does no more than make conclusory allegations of sexual harassment.

■ The court agrees with defendants that the gravamen of plaintiff's Count III is a claim for intentional infliction of emotional distress and, were it not, that RSA 281–A:8 I(b) provides for co-employee tort immunity predicated upon non-intentional torts. The court, however, is not otherwise persuaded by defendants' challenge to the sufficiency of plaintiff's complaint, condemning it as being premised upon mere conclusory allegations.

While it is true that "pleadings are not sufficient where the plaintiff rests on 'subjective characterizations' or unsubstantiated conclusions," *Fleming, supra,* 922 F.2d at 23 (quoting *Dewey v. University of N.H.,* 694 F.2d 1, 3 (1st Cir.1982), *cert. denied,* 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983)), the court finds that plaintiff's complaint passes muster.

Although Count III concededly contains the conclusory allegations that defendants intentionally or recklessly subjected plaintiff to sexual harassment and verbal abuse, it goes beyond that, as "each general allegation [is] ... supported by a specific factual basis." *Id.* The "dividing line be-

---

7. The New Hampshire Supreme Court has found bad faith in wrongful discharge cases to be the equivalent of malice. *Centronics Corp. v. Genicom Corp.,* 132 N.H. 133, 140, 562 A.2d 187, 191 (1989) (citing *Cloutier, supra,* 121 N.H. at 921–22, 436 A.2d at 1143–44).

8. Defendants argue that RSA 281–A:8, the workers' compensation statute, bars any claims plaintiff may have against Perkin–Elmer for damages as the result of personal injuries. The court agrees. *Bourque v. Town of Bow,* 736 F.Supp. 398, 403 (D.N.H.1990) (citing *O'Keefe v. Associated Grocers of New England, Inc.,* 120 N.H. 834, 835–36, 424 A.2d 199, 201 (1980)); *Brewer v.*

*K.W. Thompson Tool Co.,* 647 F.Supp. 1562, 1565 (D.N.H.1986) (RSA 281:12 is the exclusive remedy which "clearly prohibits an employee from maintaining a common-law action against his employer for personal injuries arising out of the employment relationship"). However, as the court in *Brewer* made clear, to the extent that plaintiff seeks damages for wages and/or other employment benefits lost as a result of her termination, RSA 281–A:8 presents no bar. *Brewer, supra,* 647 F.Supp. at 1565. The court notes in passing that, effective July 1, 1989, RSA 281 was reorganized. The old 281:12 is now 281–A:8.

tween pleading adequate facts and inadequate conclusions" has been cogently plotted by the First Circuit as follows:

> Most often, facts are susceptible to objective verification. Conclusions, on the other hand, are empirically unverifiable in the usual case. They represent the pleader's reactions to, sometimes called 'inferences from,' the underlying facts. It is only when such conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that 'conclusions' become 'facts' for pleading purposes.

*Id.* at 24 (quoting *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989)). Plaintiff's conclusions are, at the least, supported by the express factual averments that, during the course of her employment at Perkin–Elmer, the defendants repeatedly stared, commented, sat, stood, and attempted to converse with her in a manner that was sexually suggestive, demeaning, and socially inappropriate.

■■■ At this juncture, plaintiff need not establish the likelihood of success on the merits, but only whether she is entitled to offer evidence to support her claim. *Brewer, supra*, 647 F.Supp. at 1564 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)). In that regard, she must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery" under the theory of intentional infliction of emotional distress set out in Count III. *Roth, supra*, 952 F.2d at 613 (citing *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988)).

The New Hampshire Supreme Court has set forth the elements of this tort as follows:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

*Morancy v. Morancy*, 134 N.H. 493, 496, 593 A.2d 1158, 1159 (1991) (quoting Restatement (Second) of Torts § 46 (1965)).

■■■ As an initial matter, the court is satisfied that plaintiff's complaint sets forth allegations of conduct on the part of defendants which, recklessly at least, could have caused plaintiff's emotional distress. Furthermore, plaintiff alleges that the emotional distress she suffered was severe and was accompanied by physical injury. In setting forth the severity element of the tort, the *Morancy* court noted that

> '[c]omplete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity.'

*Id.* (quoting Restatement, *supra*, comment j). The court easily finds that plaintiff's allegations of anxiety, depression, and gastritis go beyond "transient and trivial" emotional distress. They also exceed, in severity, complaints of "sleepless nights" or a "sort of withdrawn" feeling found inadequate elsewhere. *See Gagne v. Northwestern Nat'l Ins.*, 881 F.2d 309, 318 (6th Cir.1989) (construing Ohio law). *See also Butler v. Westinghouse Elec. Corp.*, 690 F.Supp. 424, 430 (D.Md.1987) (plaintiff's distress, consisting of headaches and increased level of anxiety and stress, failed to satisfy severity element). Even so, however, the court recognizes "that conduct that is intentional or reckless and causes severe emotional distress does not *ipso facto* constitute extreme and outrageous conduct." *Fudge v. Penthouse Int'l*, 840 F.2d 1012, 1021 (1st Cir.), *cert. denied*, 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988).

■■■ New Hampshire, like most jurisdictions, embraces the definition of "outrageous conduct" as expressed in the Restatement. *Jarvis v. Prudential Ins.*, 122 N.H. 648, 652, 448 A.2d 407 (1982) (with reference to Restatement, *supra*, comment

d). Comment d offers the following guidance:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

"This standard plainly anticipates outrages far beyond the indignities and insensitivity that too often taint our daily lives." *Clay v. Advanced Computer Applications, Inc.*, 370 Pa.Super. 497, 536 A.2d 1375, 1385 (Pa.1988), *rev'd in part on other grounds*, 522 Pa. 86, 559 A.2d 917 (Pa.1989). In determining whether conduct is extreme and outrageous, it should not be considered in a "sterile setting detached from the surroundings in which it occurred," and such behavior should be found to exist "only if the average member of the community must regard the defendant's conduct as being a complete denial of plaintiff's dignity as a person." *Wethersby v. Kentucky Chicken Co.*, 86 Md.App. 533, 587 A.2d 569, 578, *cert. granted*, 324 Md. 90, 595 A.2d 1077 (1991). Here, the court is satisfied that the conduct of Wilson and Eldridge, as alleged by plaintiff, goes beyond the mere indignities, annoyances, or petty oppressions that one may expect to encounter in one's daily life and that cannot be redressed by this tort. Thus, whether defendants' behaviors can rise to the requisite level of outrageousness needs to be determined. *See Brewer, supra,* 647 F.Supp. at 1567 (it is "for the court to determine, in the first instance, whether defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery") (citing Restatement, *supra,* comment h).

When examining the parameters of actionable conduct in the past, this court, in denying a motion to dismiss, found that a plaintiff's allegations of being followed, while on duty as a police officer, by one of the town's selectmen and of being placed under surveillance to the extent that it impeded her performance could reasonably be regarded as sufficiently extreme and outrageous to permit recovery. *Brown v. Town of Allenstown*, 648 F.Supp. 831, 839 (D.N.H.1986). This court has also ruled that an employer's conduct was sufficiently extreme and outrageous based upon his improper sexual advances toward plaintiff to preclude the granting of summary judgment. *Chamberlin, supra,* 626 F.Supp. at 869. Specifically, defendant's conduct consisted of comments laden with sexual innuendo and actions such as taking plaintiff's hand, which plaintiff interpreted to mean that defendant was sexually attracted to her. *Chamberlin, supra,* 915 F.2d at 780.

Similarly, in disagreing with a trial court's finding that defendant's conduct constituted mere bad manners and acceptable "sexual banter", the Fourth Circuit expressed the following opinion:

> We agree with the trial court that claims of bad manners, rude behavior and hurt feelings do not state a claim for emotional distress. The workplace is not a Victorian parlor, and the courts are not the arbiters of its etiquette. In this case, however, plaintiff claimed something beyond the ordinary run of insult and offense which people are expected to encounter. [Plaintiff] alleged that for several years [defendant] seized every opportunity to upset her with sexually abusive language and conduct.

*Swentek v. USAIR, Inc.*, 830 F.2d 552, 562 (4th Cir.1987).

Based on the foregoing, the court is satisfied that plaintiff's claims that she was subject to abuse at times by two male co-workers over the entire course of her employment at Perkin–Elmer describe conduct egregious enough be actionable. The alleged behavior is not viewed by the court as acceptable sexual banter. As alleged, defendants' conduct represents ongoing, unadorned discrimination of an inherently offensive nature, of a kind one should not be expected to encounter as a part of daily life. Arguably, defendants seized every opportunity to upset plaintiff with sexually abusive language and conduct.

Moreover, "conduct may be characterized as extreme and outrageous in part due to the alleged tortfeasor's abuse of a position of actual or apparent authority over the injured party." *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1388 (10th Cir.1991) (applying Oklahoma law). As one commentator has noted, "The extreme and outrageous nature of the conduct may arise not so much from what is done as from the abuse by the defendant of some relation or position which gives the defendant actual or apparent power to damage the plaintiff's interests." *Prosser and Keeton on the Law of Torts* 61 (W.P. Keeton 5th ed. 1984).

Plaintiff herein explicitly alleges that defendant Wilson was in a position of authority over her. And while she makes no similar express allegation regarding Eldridge, the logical inference is that, as she was the office secretary, Eldridge, too, occupied a position of similar power over plaintiff. Thus, their abuse of their positions of authority could provide a basis for finding their conduct to be extreme and outrageous.

For the reasons stated herein, the court is persuaded that plaintiff has met her burden at this juncture and should be allowed to offer evidence to support her claim. Accordingly, the court finds and rules that plaintiff has stated a claim as to defendants Wilson and Eldridge for intentional infliction of emotional distress.

### C. Count IV—Slander

Plaintiff's slander claim is brought solely against Eldridge as a result of what he said to her on two occasions in the office in the presence of others. During the first event, he said, "Your job isn't important and doesn't require brains." The second altercation consisted of his yelling at her, "You have a bad attitude. You have a lot of growing up to do. You should learn what you're doing here. Who do you think you're working for?" Eldridge contends that these remarks are either too obviously

exaggerated to be taken as factual or that they are merely protected opinion—not flattering, but not actionable.

 The basic rule in New Hampshire is that in order for defamation[9] to be actionable, there must be a publication of a false statement of fact that tends to lower the plaintiff in the esteem of a respectable and substantial group of people. *Nash v. Keene Publishing Corp.*, 127 N.H. 214, 219, 498 A.2d 348, 351 (1985). It is a question of law, to be determined in the first instance by the trial court, whether the language of any given statement can possibly be read or heard as being an actionable statement of fact. *Id.* (citing *Pease v. Telegraph Pub. Co.*, 121 N.H. 62, 65, 426 A.2d 463, 465 (1981). The rule's reference to the "esteem of a group" is only a "criterion for identifying the kinds of statements that can be defamatory." *Duchesnaye v. Munro Enterprises, Inc.*, 125 N.H. 244, 252, 480 A.2d 123, 127 (1984). Hence, it is the standard the court applies "on motion for dismissal or summary judgment, to determine whether the language in question could reasonably have been read [or heard] to defame the plaintiff." *Id.* at 252–53, 480 A.2d at 127 (citations omitted). It is only the existence of possible defamatory meaning which is determined by reference to the thinking of any group because "defamatory publication may be to any one third person." *Id.* at 253, 480 A.2d at 127. And, as defendant rightly contends, the voicing of an opinion can be an exception to liability under basic defamation law.

 In New Hampshire, even when pernicious, pejorative, or harsh, a statement of opinion is generally not actionable, *Nash, supra*, 127 N.H. at 219, 498 A.2d at 351 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40, 94 S.Ct. 2997, 3006–07, 41 L.Ed.2d 789 (1974)), *unless* "it may reasonably be understood to imply the existence of defamatory fact as the basis for the opinion." *Id.* (citations omitted).

---

**9.** The court notes that libel and slander are both methods of defamation, the former "being expressed by print, writing, pictures, or signs; the latter by oral expressions or transitory gestures." *Black's Law Dictionary* 1244 (5th ed. 1979) (citing Restatement, *supra* § 568).

Similarly, the First Circuit does not hold that "opinion" requires absolute protection under the First Amendment. Rather, "[d]epending on the context, a statement of fact may be protected while a statement of opinion may not." *McCabe v. Rattiner*, 814 F.2d 839, 842 (1st Cir.1987). Acknowledging the opinion/fact distinction, "courts recognize that these categories are only a guide." *Id.* Based upon the teachings of the United States Supreme Court,[10] "courts have developed the doctrine of constitutionally protected opinion into an examination of the 'totality of the circumstances' surrounding an alleged defamation." *Id.* In evaluating the totality of the circumstances, the First Circuit adopts an approach which emphasizes the context in which a defamation occurs, including analyzing the words used, the setting, and the larger social context if necessary. *Id.*

Additionally, the United States Supreme Court recently rejected the view that the oft-quoted passage [11] "from *Gertz* was intended to create a wholesale defamation exemption for anything that might be labeled 'opinion.'" *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695, 2705, 111 L.Ed.2d 1 (1990).[12] While the respondents in *Milkovich* contended that only statements of fact were actionable, the Court saw no need to emphasize or create an "artificial dichotomy between 'opinion' and fact," *id.* 110 S.Ct. at 2706, and held that the First Amendment does not prohibit the application of Ohio's libel laws to the alleged defamatory "opinion" in the newspaper article at issue. *Id.* 110 S.Ct. at 2698. The Court arrived at its conclusion after examining the impact of the words used, finding that they could imply a factually false connotation and that the context involved did not negate that impression. *Id.* at 2707. Furthermore, the

Court found that the connotation was "sufficiently factual to be susceptible of being proved true or false[ ]" and that such a determination could be made on a "core of objective evidence." *Id.*

Accordingly, the court concludes that *Milkovich* only supports and strengthens "opinion" law as already articulated in New Hampshire and by the First Circuit. *See generally* Robert C. Vanderet, et al., *Media Law and Defamation Torts: Recent Developments*, 27 Tort & Ins. L.J. 333, 341 & n. 70 (1992) (many courts using a pre-*Milkovich* "totality of the circumstances" approach do not view existing opinion law as materially altered) (and cases cited therein).

As to defendant's assertion that his remarks were too exaggerated to be taken as factual, the court is not persuaded. As plaintiff correctly points out, the standard to be used is based upon the *average* person, and if that average reader or hearer could reasonably understand a statement as actionably factual, then there is an issue for a jury's determination, precluding dismissal or summary judgment. *Nash, supra*, 127 N.H. at 219, 498 A.2d at 352. The court is satisfied that a remark such as "your job isn't important and doesn't require brains" is easily susceptible of being verified as true or false and that an average hearer could thus understand the remark to be factual and could reasonably hear those words to defame the plaintiff. The court therefore finds the first statement to be an actionable statement of fact.

Defendant argues that the second "statement" is "hardly offensive" and that, while perhaps unflattering, it is merely protected opinion. Arguably, "you have a bad

---

**10.** *See Letter Carriers v. Austin*, 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974); *Greenbelt Cooperative Publishing Ass'n v. Bresler*, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970).

**11.** Those heavily relied-upon words are as follows:

Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges

and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact.

*Gertz, supra*, 418 U.S. at 339–40, 94 S.Ct. at 3007.

**12.** Although *Milkovich* involved a media defendant, and the Court reserved judgment on cases involving nonmedia defendants, 110 S.Ct. at 2706 n. 6, this court finds its holdings on the opinion versus fact issue instructive.

attitude" and "you have a lot of growing up to do" could be one man's opinion. However, the instant case is one in which the context is revealing. Taking plaintiff's factual allegations as true, at the time the allegedly defamatory remarks were made, she had suffered through more than a year of sexually suggestive and demeaning comments and conduct, and her requests to have such behavior cease had been ignored. She had also gone to Braun and others at Perkin–Elmer seeking assistance in dealing with ongoing sexual harassment. In this context, defendant's utterances to this supervisee could be construed as actionable opinion. Furthermore, Eldridge's "opinion" could conceivably be understood to imply the existence of defamatory fact (e.g., immaturity, perhaps, for not responding affirmatively to sexual advances). And, thus far, nothing negates this impression. Such a connotation could also be sufficiently factual to be susceptible of being proven true or false and, if false, capable of lowering plaintiff in the esteem of others. The court is thus satisfied that these two remarks are actionable opinion, not to be protected.

■ Defendant's remaining remarks, yelled at plaintiff, were, "You should learn what you're doing here" and "Who do you think you're working for?" These, the court concludes, are even less capable of being characterized as protected opinion. Such comments, from a superior at one's place of employment, after over one year on the job, quite reasonably could be understood to imply the existence of defamatory fact. In the context in which they were made, these remarks clearly imply plaintiff did not know what she was doing, also a matter capable of verification.

For the reasons discussed, the court finds that none of defendant's remarks come close to being the "imaginative expression" or "rhetorical hyperbole", which are still assured of First Amendment protection. The court concludes that these statements are actionable, and thus plaintiff must be allowed to offer evidence on the matter.

## D. Count VI—Enhanced Compensatory Damages

Lastly, Mr. and Mrs. Godfrey seek enhanced compensatory damages as the result of all defendants' alleged wrongs, and contend that defendants' motion to dismiss is premature. Plaintiffs' claim is challenged on the ground that they did not allege any conduct by defendants that could support an inference of the malice required for recovery of such damages. See Munson v. Raudonis, 118 N.H. 474, 479, 387 A.2d 1174, 1177 (1978).

■ It is generally settled that enhanced compensatory damages are not available under Title VII. Brown, supra, 648 F.Supp. at 840 (citing De Grace v. Rumsfeld, 614 F.2d 796, 808 (1st Cir.1980)). Properly pled and proved, however, "liberal compensatory damages" are available under New Hampshire law in exceptional circumstances. Aubert v. Aubert, 129 N.H. 422, 431, 529 A.2d 909, 914 (1987). " '[W]hen the act involved is wanton, malicious, or oppressive, the compensatory damages awarded may reflect the aggravating circumstances.' " Id. (quoting Vratsenes v. N.H. Auto, Inc., 112 N.H. 71, 73, 289 A.2d 66, 68 (1972)). The mere involvement of a tort, however, even if intentional, is insufficient in this regard. Id. There must be " 'ill will, hatred, hostility, or evil motive on the part of the defendant.' " Id., 529 A.2d at 914–15 (quoting Munson v. Raudonis, 118 N.H. 474, 479, 387 A.2d 1174, 1177 (1978)).

■ The court is satisfied that plaintiffs have pled acts by defendants Wilson and Eldridge that at the very least could be construed as oppressive, i.e., ongoing acts of sexual harassment at one's place of employment. Munson, supra, 118 N.H. at 479, 387 A.2d at 1177. Furthermore, to the extent it is necessary at this juncture, the court finds that plaintiffs made sufficient allegations of the requisite actual malice. Id. It would be premature to conclude that Wilson's and Eldridge's continued conduct toward the lone female employee after she rebuffed their efforts at sexual harassment did not involve ill will or hostility. If plaintiffs can prove the oppressive nature of the

conduct at issue and the required malice, they would be entitled to the liberal compensatory damages they seek. Thus, as to Wilson and Eldridge, the motion to dismiss must be denied.

Perkin–Elmer's only exposure to liability which could give rise to the liberal damages sought is under Count II (wrongful discharge). As such, its conduct involving failure to investigate and correct known acts of sexual harassment rendering plaintiff's working conditions intolerable could be construed as oppressive, and the court so finds. Furthermore, failure to thus pursue known acts of illegal employment discrimination could reasonably be viewed as a manifestation of ill will. Accordingly, the motion to dismiss as to Perkin–Elmer is denied.

As a further matter, the court finds that this claim must be dismissed as to defendant Braun. Even though, as plaintiff's supervisor and one with authority regarding employment practices, his failure to respond to her repeated admonitions regarding sexual harassment is similarly onerous, his liability, if any, can only arise under Title VII. *See Rush v. McDonald's Corp.,* 760 F.Supp. 1349, 1356 n. 9 (S.D.Ind. 1991) (under 42 U.S.C. § 2000e(b), "any agent" of an employee is likewise an "employer" for Title VII purposes, and thus an employee's supervisor is a proper defendant). This, of course, precludes the possibility of recovery under Count VI as to Braun.

*Conclusion*

For the reasons discussed herein, defendants' motion to dismiss plaintiffs' state law claims for lack of subject matter jurisdiction is denied. Defendants' motion to dismiss the various counts on Rule 12(b)(6) grounds is ruled upon as follows:

Count II—denied;

Count III—granted as to Braun; as to Wilson and Eldridge, granted only to the extent it states a claim for negligent infliction of emotional distress; otherwise denied;

Count IV—denied as to Eldridge, otherwise granted; and

Count VI—granted as to Braun, denied as to Perkin–Elmer, Wilson, and Eldridge.

SO ORDERED.