Joyal v. Hanover Ins.                    CV-99-352-JD   03/01/00
                UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


Cheryl-Anne Joyal

        v.                              Civil No. 99-352-JD
                                        Opinion No. 2000 DNH 050
Hanover Insurance
Company/AllMerica Financial
Corporation, et al.


                           O R D E R


        The plaintiff, Cheryl-Anne Joyal, sued her former employer

and supervisor under the Americans with Disabilities Act and

state law.  The defendants move to dismiss Counts III, IV, V, and

VI of Joyal's complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) (document no. 6).  Joyal objects to dismissal

except as to Count VI.  The defendants also request a hearing on

the motion to dismiss pursuant to Local Rule 7.1(d) (document no.

7).

                        Standard of Review

        A motion to dismiss under Federal Rule of Civil Procedure

12(b)(6) is one of limited inquiry, focusing not on "whether a

plaintiff will ultimately prevail but whether the claimant is

entitled to offer evidence to support the claims."  Scheuer v.

Rhodes, 416 U.S. 232, 236 (1974).  In reviewing the sufficiency

of a complaint, the court accepts "the factual averments

contained in the complaint as true, indulging every reasonable

inference helpful to the plaintiff's cause." <u>Garita Hotel Ltd.</u>
<u>Partnership v. Ponce Fed. Bank</u>, 958 F.2d 15, 17 (1st Cir. 1992);
<u>see also</u> <u>Dartmouth Review v. Dartmouth College</u>, 889 F.2d 13, 16
(1st Cir. 1989).  Applying this standard, the court will grant a
motion to dismiss "'only if it clearly appears, according to the
facts alleged, that the plaintiff cannot recover on any viable
theory.'"  <u>Garita Hotel Ltd. Partnership</u>, 958 F.2d at 17 (quoting
<u>Correa-Martinez v. Arrillaga-Belendez</u>, 903 F.2d 49, 52 (1st Cir.
1990)).


## Background[1]

Joyal began working for Hanover Insurance Company over
twenty years ago.  At the time of the incidents important to this
motion, she worked as an adjuster in the company's worker's
compensation division.  Joyal was diagnosed with depression and
bi-polar disorder in the 1980s, and suffered from panic attacks
and claustrophobia.  She took the medication Xanax to treat her
symptoms.  In 1995, she experienced a panic attack at work that
at least one of her supervisors knew about.  Joyal discussed her
claustrophobia with her direct supervisor, Gregory Kirkman, and
told him she took Xanax.

---

[1]The court takes the facts as alleged in Joyal's complaint.
<u>See</u> Fed. R. Civ. P. 12(b)(6).  The recitation of facts does not
represent factual findings by the court.

Around April of 1997, Joyal's workload increased, and she experienced a concomitant increase in her work-related stress. She had recently become the only worker's compensation adjuster assigned to Vermont, and Kirkman was pressuring her to perform so she could win an award for the unit.

In October of 1997, Joyal experienced a panic attack at a work-related seminar, which a supervisor witnessed. After the attack, Joyal informed Kirkman that she would miss the rest of the two-day seminar and a few more days of work to recover from the panic attack. She told Kirkman that work-related stress triggered the attack. Kirkman responded by telling her that her unit was behind in productivity, and mentioned the award he wanted the unit to win. He asked her, "What the hell is your problem?" and, "What's the deal?" He questioned her commitment to the company. She reminded him that she suffered from claustrophobia and panic attacks, and explained that work-related stress aggravated her condition. She requested that he reduce her workload, which at that time was greater than normal. He agreed not to assign her any new cases in November of 1997.

In the next few weeks, Joyal asked Kirkman at least twice for staff to help her with handling mail and answering telephones. Kirkman refused her requests. Joyal took a vacation over Thanksgiving, and when she returned on December 2, 1997,

Kirkman brought her into a small windowless room to meet with her and a new supervisor. Kirkman informed her that the Vermont Department of Labor had audited her files and had threatened to impose a $22,000 fine against the company. Kirkman told her he had met with someone from the Vermont Department of Labor for one whole day in order to work things out, at great inconvenience to himself. He also complained about her lack of productivity for the month of November, which she explained was due to her vacation absence. She also reminded him that she had foregone taking any vacation time for many months, and that her productivity in October was high.

On December 3, 1997, Joyal discovered that Kirkman had not assigned anyone to cover her workload while she was on vacation, as he had promised to do. As a result, she found three hundred voice messages and letters and twenty-three new files, although Kirkman had agreed not to give her any new files in November. Joyal experienced a panic attack at this discovery and went on disability leave.

Joyal soon contacted the official at the Vermont Department of Labor with whom Kirkman said he had met to work out the problems with Joyal's files. This official told Joyal that he had not requested the meeting with Kirkman for the purpose of discussing her work, the meeting only lasted an hour, he never

mentioned the possibility of a fine, and the Vermont Department of Labor had not audited her files. Joyal believed that Kirkman was planning to have her fired, and she consequently suffered severe depression that kept her out on disability.

In January or February of 1998, Joyal heard from a co-worker that the company was planning to fire her after her return from disability leave. Joyal contacted someone from human resources and a general manager of the company, both of whom denied the rumor. Joyal then contacted a co-worker who told her Kirkman had called her a "quitter" and expressed concern about someone who had a "nervous breakdown" being able to work again, and the company would fire her in such a way as to deprive her of benefits and tarnish her performance record.

In May of 1998, Joyal's doctor told her she could try to return to work in June. However, Joyal had been informed by her "job coach" at AllMerica[2] that her job would still be highly stressful because of a heavy workload, and the company would not take any measures to lessen the stress. The "job coach" suggested to Joyal that she not return to work. Joyal took this as another sign that she would be fired soon after returning to work. Joyal therefore gave notice and resigned from the company.

_____

[2]Hanover Insurance Company was purchased by AllMerica Financial Corporation in or around 1995.

5

I.   Count III - Intentional Infliction of Emotional Distress

The defendants contend that Joyal has failed to allege sufficient facts to support a claim of intentional infliction of emotional distress against Kirkman.  To maintain this claim, Joyal must allege sufficient facts to infer that Kirkman intentionally or recklessly caused her severe emotional distress through his extreme and outrageous conduct.  See Miller v. CBC Cos., 908 F. Supp. 1054, 1067 (D.N.H. 1995) (citing Morancy v. Morancy, 134 N.H. 493, 495-96 (1991)).  New Hampshire law follows the definition of outrageous conduct found in the Restatement (Second) of Torts.  See Godfrey v. Perkin-Elmer Corp., 794 F. Supp. 1179, 1188 (D.N.H. 1992); Morancy, 134 N.H. at 495-96. According to the Restatement, the offending conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Godfrey, 794 F. Supp. at 1189 (quoting Restatement (Second) of Torts § 46, cmt. d (1965)).  "Moreover, 'conduct may be characterized as extreme and outrageous in part due to the alleged tortfeasor's abuse of a position of actual or apparent authority over the injured party.'"  Godfrey, 794 F. Supp. at 1190 (quoting Daemi v. Church's Fried Chicken, Inc., 931 F.2d

7

1379, 1388 (10th Cir. 1991)).

Joyal alleges that upon her return to work after a vacation, Kirkman fabricated an elaborate lie about the Vermont Department of Labor auditing her files and finding serious problems. He told her she had put the company in danger of receiving a $22,000 fine. Moreover, he reprimanded her in front of a new supervisor in a small windowless room, all the while aware of her claustrophobia and her severe difficulty handling work-related stress. These allegations present an abuse by Kirkman of his supervisory authority. Kirkman's alleged behavior "goes beyond the mere indignities, annoyances, or petty oppressions" that Joyal might expect to encounter at her workplace. Godfrey, 794 F. Supp. at 1189. Joyal has alleged sufficient facts to support her claim of intentional infliction of emotional distress.

II.  Count IV - Negligent Infliction of Emotional Distress

The defendants argue that New Hampshire's worker's compensation statute bars claims of negligent infliction of emotional distress against co-workers. See N.H. Rev. Stat. Ann. ("RSA") § 281-A:8, I(b) (1999); Censullo v. Brenka Video, Inc., 989 F.2d 40, 43 (1st Cir. 1993) (barring claims of emotional distress); Thompson v. Forest, 136 N.H. 215, 219 (1992) (barring torts of negligence against co-workers). Joyal responds that the

8

statute does not apply to her claim because her injury did not arise out of and in the course of her employment.

The worker's compensation statute only covers accidental injuries that arise out of and in the course of employment. See RSA § 281-A:2, XI. Joyal argues that some of her emotional distress was caused by the circumstances of her termination, and therefore occurred after her employment ended. However, the consequences of an employee's termination are a foreseeable part of any course of employment, and the worker's compensation statute applies to injuries suffered as a direct result of the circumstances accompanying termination.[3] See Frechette v. Wal-Mart Stores, 925 F. Supp. 95, 99 (D.N.H. 1995) (holding claim of intentional infliction of emotional distress arising from termination barred by statute) (citing Kopf v. Chloride Power Elecs., 882 F. Supp. 1183, 1191 (D.N.H. 1995), overruled on other grounds, Smith v. F.W. Morse & Co., 76 F.3d 413, 428 (1st Cir. 1996)). Accordingly, Joyal's argument is unpersuasive and her claim is barred by the worker's compensation statute.

---

[3]Joyal cites three New Hampshire Superior Court opinions that allowed claims of emotional distress relating to wrongful termination to proceed. Until the New Hampshire Supreme Court addresses the issue, the court declines to stray from the precedent of this court.

III. Count V - Enhanced Compensatory Damages

The defendants' sole ground for moving to dismiss Count V is that if the court dismisses Counts III, IV, and VI, there remains no underlying state claim for which Joyal can collect enhanced compensatory damages. Because the court does not dismiss Count III, the defendants' argument fails.

IV. Count VI - Wrongful Termination

Joyal does not object to the dismissal of Count VI.

Conclusion

The defendants' request for a hearing on the motion is denied (document no. 7). The defendants' motion to dismiss (document no. 6) is granted as to Count IV, negligent infliction of emotional distress, and Count VI, wrongful termination, but is denied as to Count III, intentional infliction of emotional distress, and Count V, enhanced compensatory damages.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

March 1, 2000

cc:  Lauren S. Irwin, Esquire
     Richard V. Wiebusch, Esquire

10