Department of Employment Security
No. 84-099

APPEAL OF THE CITY OF FRANKLIN
(New Hampshire Department of Employment Security)

November 30, 1984

*Paul T. Fitzgerald*, of Laconia, by brief and orally, for the City of Franklin.

*William Franks*, of Tilton, by brief and orally, for the claimant, Mildred Piper.

*Gregory H. Smith*, attorney general (*Daniel J. Mullen*, assistant attorney general, on the brief and orally), for the State.

BATCHELDER, J.  The City of Franklin appeals a ruling by the

▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮

appellate division of the department of employment security awarding the claimant, Mildred Piper, unemployment compensation benefits. We affirm.

The claimant was tax collector for the City of Franklin for approximately thirteen years. On February 18, 1983, she voluntarily terminated her employment with the city and applied for unemployment compensation benefits. The department of employment security (DES) initially denied that application. The claimant appealed to a DES appeal tribunal, which affirmed the denial, whereupon she further appealed to the DES appellate division. The appellate division reversed, ordering that benefits be paid to the claimant. The city appealed the appellate division's ruling. RSA 282-A:67 (Supp. 1983).

During her tenure as tax collector, the claimant shared office space with the city treasurer and city clerk, but reported directly to the city manager. On May 20, 1982, the Franklin city manager, by memorandum, directed that all staff within the city clerk's office thereafter would be subject to the administrative supervision of the city clerk. The order did not directly alter the claimant's responsibilities for collecting taxes, nor was her salary affected by the reorganization.

The appeal tribunal found that the claimant resented the reorganization and, on several occasions, attempted to consult directly with the city manager, who continued to insist that the claimant work directly under the city clerk. The appeal tribunal also found that the claimant had never been refused the cooperation and understanding of the city clerk or city manager and that there was, up to that time, no impingement by anyone on her performance of her official duties. The appeal tribunal further found that when the time came for the annual tax sale, the claimant was again required to conduct her efforts under the supervision of the city clerk. On January 31, 1983, the claimant was reprimanded for seeking to deal with the manager directly, rather than through the city clerk as ordered by the manager. On February 18, 1983, the claimant resigned as tax collector.

■■ The question on appeal is whether the claimant's voluntary termination was for a cause attributable to the employer. Our review is confined to the record, and we cannot substitute our judgment as to the weight of the evidence on questions of fact for that of the appeal tribunal. RSA 282-A:67, III, IV (Supp. 1983); *see also, Appeal of Beebe Rubber Co.*, 124 N.H. 533, 474 A.2d 984 (1984) (interpreting nearly identical language limiting the scope of review of the appellate division). However, we will reverse the appeal tribunal where its conclusions are affected by an error of law. RSA 282-

A:67, IV (Supp. 1983). The question whether, on the facts as found by the appeal tribunal, a claimant's voluntary termination was for a cause attributable to the employer, is a question of law for this court.

RSA 282-A:32, I(a) (Supp. 1983) provides that a person is ineligible to receive unemployment compensation benefits if "he has left his work voluntarily without good cause in accordance with the rules of the commissioner." The rule in question provides in relevant part: "*Voluntary Quit Without Good Cause.* An individual shall be considered to have left his work voluntarily without good cause if, of his own choice or volition, he terminates the employee-employer relationship for a reason not attributable to the employer." N.H. ADMIN. RULES, Emp 503.01.

Our cases have often repeated that this "voluntary quit" rule (formerly DES Regulation 21) is an integral part of the statute and defines and restricts its scope. *See Nashua Corp. v. Brown*, 99 N.H. 205, 208, 108 A.2d 52, 54 (1954); *Kurowski v. New Hampshire Dept. of Employment Security*, 107 N.H. 177, 179, 219 A.2d 281, 282 (1966).

In *Brown*, we stated, "the regulation provides in effect that the voluntary quit by the employee must have some connection with or relation to the employment in order to be compensable." *Nashua Corp. v. Brown, supra* at 207, 108 A.2d at 54 (a wife's voluntarily leaving employment to join her husband in another State is not a termination attributable to the employer); *see also Putnam v. Dept. of Employment Security*, 103 N.H. 495, 175 A.2d 519 (1961) (an employee's loss of available transportation to work where employer was under no obligation to provide transportation is not a termination attributable to the employer).

The first issue on appeal is whether the city manager exceeded his authority by directing the reorganization, in violation of the city charter. Upon a review of the record, which includes the city charter of Franklin and the city's administrative code adopted pursuant to the charter, we agree with the ruling of the appellate division that the manager exceeded his authority. The manager is responsible for supervising the administrative affairs of the city consistently with the laws of the State, the city charter, and the ordinances of the city council. FRANKLIN CITY CHARTER § 4. The city council is required to adopt an administrative code dividing the administrative service of the city into departments. *Id.* § 8. Only the city council, by ordinance, "may create, consolidate, or abolish departments, divisions, and bureaus of the city and define or alter their functions and duties." *Id.*

The Administrative Code of the City of Franklin sets forth the administrative departments of the city and the titles of the officers who head such departments. CITY OF FRANKLIN ADMINISTRATIVE CODE, pt. 1, § 2(a). Among those city departments is a records department, to be headed by the city clerk, and the tax collection department, to be headed by the tax collector. *Id.*, pt. 2, §§ 12, 13. Each department head is charged with responsibility "for the efficient operation of his department" and for the "exercise [of] all the powers conferred upon his office by applicable laws, ordinances and resolutions." *Id.*, pt. 1, § 3(a). Department heads are further authorized to prescribe departmental rules and to prepare budget reports and operations reports for the manager as required by the manager. *Id.*, pt. 1, § 3(b), (f), (g). Department heads are empowered to establish subordinate positions and to make appointments and removals as necessary. *Id.*, pt. 1, § 5.

■ The tax collection department of the City of Franklin is co-equal with the records department, and the tax collector is the administrative equal of the city clerk. The power to alter that balance rests exclusively with the city council. As a result, the manager's action conferring power upon the city clerk to supervise the tax collector was unlawful.

The claimant's status as tax collector was substantially altered by the city manager's unlawful directive. No longer permitted to deal with the manager directly, and subordinate to the city clerk, the claimant's role as a department head in the city was in jeopardy. Though the appeal tribunal found that the tax collector was never refused cooperation in the performance of her duties after the reorganization, the ultra vires reorganizing infringed on the claimant's lawful prerogatives as tax collector. The reprimand of the claimant was a direct result of her failure to adhere to the unlawful order, and further diminished her status and credibility at work.

The appeal tribunal suggested in its ruling that the claimant's failure to seek out the city attorney to correct the manager's error bars this claim. The city cites the claimant's failure to appeal to the city's personnel advisory board as a further bar, and argues in its brief that the claimant must exhaust her remedies within the employer's organization before claiming a voluntary termination attributable to the employer.

■ We hold that the claimant is not required to exhaust every available remedy within the employer's organization before voluntarily terminating the employment on account of the employer. A claimant need only have acted reasonably under the circumstances

of the employment. *Therrien v. Maine Employment Sec. Com'n*, 370 A.2d 1385, 1389 (Me. 1977) (employee's beliefs and behavior as justifying good cause in voluntary quit must be measured by reasonableness under all the circumstances).

In this case, the illegal action by the manager initiated a chain of events leading to the claimant's justifiable job dissatisfaction and eventual reprimand. Her objections to the reorganization placed the city on reasonable notice that there was some problem with the manager's action. At the same time, however, the manager continued to be the claimant's superior, and, as a result, her viable options to set aside the manager's unlawful directive were plainly limited. The manager's order and subsequent events would reasonably cause the claimant legitimate concern for her ability to meet her statutory duties and, thus, for her own professional integrity. We conclude that, on this record, the claimant's termination was attributable to the employer.

> *Decision of the appellate division affirmed; decision of the appeal tribunal reversed.*

All concurred.