Department of Employment Security
No. 90-026

APPEAL OF JEFFREY W. SWIFT

(New Hampshire Department of Employment Security)

April 26, 1991

*New Hampshire Legal Assistance*, of Concord (*Susan Sard White* on the brief and orally), for the plaintiff.

*John P. Arnold*, attorney general (*David S. Peck*, senior assistant attorney general, on the brief and orally), for the State.

THAYER, J. This is an appeal under RSA 282-A:67 (Supp. 1990) from a decision of an appeal tribunal of the New Hampshire Department of Employment Security (DES). The DES appellate board sustained the appeal tribunal's ruling, which denied the claimant's request for unemployment compensation benefits on the ground that the claimant terminated his prior employment voluntarily without good cause attributable to his employer. RSA 282-A:32, I(a); N.H. ADMIN. RULES, Emp 503.01. We affirm.

The facts are as follows. For approximately twelve years, the claimant, Mr. Swift, worked as a lumber inspector at a mill near his home. Two-and-one-half of those years were spent working for Beebe River Wood Products (Beebe River). The job entailed inspecting and grading lumber as it moved past Mr. Swift's work station at a rate of thirteen to fourteen boards per minute. After the boards passed his station, they continued on chains to a piece of equipment called a "slot sorter," where a "lumber piler" fed the boards into the slot sorter according to the grade mark put on them by Mr. Swift. The lumber piler worked outside on a platform enclosed by two walls and a ceiling, whereas Mr. Swift worked inside the mill sitting down. Mr. Swift testified that occasionally a board would move up the chains to the slot sorter before the previous board could be fed into the machine. When this happened, the sorter would force the moving board up onto the preceding board causing it to "kick back," or snap loose and push back toward the lumber piler.

On February 7, 1989, the foreman at Beebe River informed Mr. Swift that his job was being changed, and that he was now responsible for both grading the lumber and running the slot sorter. This change required Mr. Swift to work outside at the slot sorter, rather than at his normal work station. Mr. Swift then went to the plant manager to discuss this change. The manager told him that his grading had been off by fifty percent, and that grading the lumber standing up at the slot sorter would improve his accuracy. Mr. Swift indicated that he would require a raise in order to do both jobs. When this request was refused, Mr. Swift left the mill and never returned.

Mr. Swift filed a claim for unemployment benefits on the same day he left Beebe River. In a decision dated March 14, 1989, the certifying officer found Mr. Swift ineligible for unemployment benefits under RSA 282-A:32, I(a), because he voluntarily terminated his employment without good cause attributable to the employer, see N.H. ADMIN. RULES, Emp 503.01, and for failing to meet the availability requirements of RSA 282-A:31, I(c). Mr. Swift then brought

an appeal to a DES appeal tribunal, and a hearing was held on April 13, 1989. No one from Beebe River appeared at the hearing.

The appeal tribunal found Mr. Swift ineligible for unemployment benefits for voluntarily leaving his employment without good cause attributable to the employer, and for operating a part-time archery business out of his home. The appeal tribunal further found that Mr. Swift's departure from Beebe River was due, at least in part, to his dissatisfaction with his position as lumber inspector and growing disappointment over a promised promotion which never materialized. Moreover, the appeal tribunal found that the claimant was unhappy with the mill's policy of docking its workers fifteen minutes if they arrived at work four minutes late. Nevertheless, the appeal tribunal determined that the claimant would have continued working at Beebe River as both the lumber inspector and slot sorter operator, if he had been granted his request for $2 more per hour in wages.

Mr. Swift subsequently requested a reopening of his case, but his request was denied. He then further appealed to the DES appellate board, and a hearing was held on October 27, 1989. On November 9, 1989, the appellate board sustained the decision of the appeal tribunal. A motion for reconsideration was then filed, but the appellate board denied the motion. Mr. Swift now appeals to this court pursuant to RSA 282-A:67, I (Supp. 1990).

Mr. Swift contends that the change in his job requirements doubled his workload, exposed him to safety hazards and created harsher working conditions because he was required to stand on an outdoor platform, rather than sit inside the mill. Therefore, the claimant argues, Beebe River's conduct amounts to good cause for Mr. Swift to terminate his employment. He contends that there is no evidence in the record to support the appeal tribunal's findings that the additional responsibilities were not unreasonable, unjustified, or unduly dangerous, and challenges the appeal tribunal's decision that his voluntary termination was not for good cause attributable to his employer as being contrary to law. We first address the applicable standard of review.

 By statute, this court's review is confined to the record, and we cannot substitute our judgment for that of the appeal tribunal when assessing the weight of the evidence on questions of fact. RSA 282-A:67, V (Supp. 1990). We will, however, reverse the appeal tribunal where its conclusions are affected by an error of law or are clearly erroneous. *Id.*; *Appeal of N.H. Sweepstakes Commission*, 130 N.H. 659, 662, 547 A.2d 241, 243 (1988). The issue in this case, *i.e.*,

whether, based on the facts determined by the appeal tribunal, the claimant's voluntary termination was for a cause attributable to the employer, is a question of law for this court. *Appeal of City of Franklin,* 125 N.H. 761, 763, 485 A.2d 295, 297 (1984).

■■ This court has held that "the combined effect of the statute and administrative regulation applicable here is that an employee who voluntarily leaves employment is not entitled to benefits unless his resignation has some connection with or relation to employment. . . ." *Appeal of Peterson,* 126 N.H. 605, 607, 495 A.2d 1266, 1267 (1985) (quoting *Nashua Corp. v. Brown,* 99 N.H. 205, 207, 108 A.2d 52, 54 (1954)). The question before us, then, is whether there is such a connection when an employee leaves his or her work because the employer changed the employee's job requirements. Our interpretation of RSA chapter 282-A and New Hampshire Administrative Rule, Emp 503.01 places the burden of proof in cases of this nature upon the claimant. *See Gorecki v. State,* 115 N.H. 120, 122, 335 A.2d 647, 649 (1975).

The record in this case supports the appeal tribunal's implicit finding that the claimant did not meet his burden of proving that his departure from Beebe River was related to his employment. Mr. Swift testified that he had a number of grievances with Beebe River that were unrelated to the change in his job description. He testified that he never received a promised promotion, and that Beebe River took advantage of his close proximity to the mill, and the difficulties he would encounter if he had to travel to another mill for new employment, when they gave the promotion to someone else. Mr. Swift also testified that he would have been willing to perform his job while running the slot sorter if he had been compensated with a raise. Additionally, the claimant testified that he had problems with some of the policies Beebe River followed in running its business. Mr. Swift also testified that requiring him to perform his job while running the slot sorter presented additional safety hazards, but he admitted that he never witnessed anyone actually get injured as a result of the "kickback" occasionally caused by the slot sorter. In short, there is ample evidence in the record supporting the appeal tribunal's finding that Mr. Swift was unhappy working at Beebe River and that the events on February 7, 1989, simply accelerated his decision to terminate his employment.

Moreover, Mr. Swift's argument that the appeal tribunal's decision was contrary to law lacks merit. The cases relied upon by the claimant are readily distinguishable. This court's decisions in *City of*

*Franklin*, 125 N.H. 761, 485 A.2d 295 and *St. Germain v. Adams*, 117 N.H. 659, 377 A.2d 620 (1977) do not require reversal of this case. In *St. Germain*, the employee was hired under the express condition that she would not be assigned a regular work shift on Sundays. *Id.* at 661, 377 A.2d at 622. The employer violated this condition, and this court held that such a breach of the hiring contract constituted good cause attributable to the employer. *Id.* In the instant case, however, no breach of a hiring contract has been alleged or established. No evidence suggests that the claimant ever specified what conditions were attached to his employment.

Similarly, *City of Franklin* does not control the case before us. In that case the employee, the city tax collector, was subjected to an illegal reorganization of her department by the city manager. 125 N.H. at 763–64, 485 A.2d at 297. When the claimant attempted to set aside the reorganization, she was reprimanded. *Id.* at 762, 485 A.2d at 296. The actions of the city manager placed the claimant's role as a department head in jeopardy, and infringed upon her lawful prerogatives as tax collector. *Id.* at 764, 485 A.2d at 298. Therefore, the court held that the claimant's termination was for good cause directly attributable to the employer. *Id.* at 765, 495 A.2d at 298. The instant case, in contrast, involves no illegality. The record does not support the claimant's contention that his new job duties were so unreasonable as to comprise an involuntary discharge, *see Pettypool v. Arizona Dept. of Economic Sec.*, 161 Ariz. 167, 170–71, 777 P.2d 230, 233–34 (1989), particularly in light of the claimant's testimony that he would have agreed to perform the additional responsibilities if he were granted his requested raise. Therefore, the appeal tribunal's decision is not in error.

■ We hold that the claimant terminated his employment without good cause attributable to his employer. In light of this holding, we need not reach the claimant's second argument that the operation of a part-time business did not disqualify him from receiving unemployment benefits. Accordingly, the decision of the appeal tribunal denying benefits is affirmed.

*Affirmed.*

All concurred.