2005 VT 114

**Bonnie LYNCH v. DEPARTMENT OF EMPLOYMENT AND TRAINING**

[890 A.2d 93]

No. 05-003

¶ 1. October 6, 2005. Claimant Bonnie Lynch appeals from an Employment Security Board (ESB) determination that she was ineligible for unemployment compensation after leaving her job without good cause attributable to her employer. We affirm.

¶ 2. Claimant worked as a secretary for the Bennington County Public Defender's Office for three and one-half years before resigning in August 2004. The reasons for claimant's resignation centered on what claimant characterizes as hostile, unprofessional, and aggressive conduct by her immediate supervisor. Claimant described the supervisor as inflexible, controlling, and abusive. The supervisor's treatment of claimant and others involved in the court system became an issue of great concern to claimant. The testimony before the claims adjudicator established that the supervisor had acted inappropriately during a meeting with the presiding judge of the Bennington District Court and was later required to apologize for her conduct. Other instances of the supervisor's less-than-courteous conduct were described in the record.

¶ 3. Claimant complained to the public defender about her supervisor on two occasions. The public defender told claimant that she and her supervisor should try to resolve their differences, which claimant attempted to do. The supervisor's behavior improved for a while, but the improvement did not last. Claimant complained again in late July 2004. This time, she told the public defender that she intended to resign because she found the situation intolerable. The public defender offered three alternative solutions to address the issue: (1) allow the public defender to address claimant's concerns with the supervisor at the supervisor's regular performance review, which was scheduled two weeks from that date; (2) ask the Defender General's Office to intervene; and/or (3) ask the state employees' union for assistance in resolving the problem using the process established by the union contract. Believing that the work environment would deteriorate rather than improve if she pursued one or more of those options, claimant decided to resign and to file for unemployment compensation. The denial of unemployment compensation benefits gave rise to this appeal.

¶ 4. On appeal, claimant challenges only the ESB's conclusion and not the facts the ESB found. Therefore, our review of the ESB's decision is narrow and requires us to determine "whether the findings support the [ESB]'s conclusions, and the conclusions its decision." *Turco v. Dep't of Employment Sec.*, 141 Vt. 135, 136, 446 A.2d 345, 346 (1982). At issue is whether, under the facts the ESB found, claimant left her "last employing unit voluntarily without good cause attributable to such employing unit." 21 V.S.A. § 1344(a)(2)(A). This question must be analyzed under the specific facts and circumstances of each individual case, *Turco*, 141 Vt. at 137, 446 A.2d at 346, to determine whether the employee's decision was reasonable. *Skudlarek v. Dep't of Employment & Training*, 160 Vt. 277, 280, 627 A.2d 340, 342 (1993). The employee has the burden to prove good cause for quitting her job. *Id.*

¶ 5. Because claimant initiated the separation from employment in this case, she had the burden to demonstrate that her decision to resign was reasonable because the employer failed to do anything to improve the working conditions

about which she complained. See *Turco*, 141 Vt. at 138, 446 A.2d at 347 (affirming ESB decision in favor of employee where employer was aware of co-worker harassment and did nothing to address the problem). The ESB determined that claimant did not sustain her burden, and we agree. Even if all of the allegations claimant made about her supervisor were true, the record shows that her employer took measures to deal with the matter after claimant complained. The public defender spoke to the supervisor about the problem and her behavior improved for some time. After claimant complained to the public defender a second time, the public defender provided three different options for claimant to handle the problem. Claimant's decision to forego those options and leave her job permanently cannot be attributed to her employer.

¶ 6. This case is distinguishable from *Turco*, where this Court upheld the ESB's decision to grant the claimant unemployment compensation. The claimant in *Turco* had been subject to false claims of stealing by his coworkers because the coworkers did not like the claimant's religious proselytizing. In contrast to the public defender's actions in this case, the employer in *Turco* did nothing to address the claimant's difficulties with his coworkers. The Court explained that "given the history of harassment, [the employer]'s knowledge of it, the employer's failure to address the problem, and the seemingly calloused indifference to claimant's plight we cannot say that the Board erred in concluding that the leaving was with good cause attributable to the employing unit." *Id.* The ESB's findings show that the employer was sympathetic to claimant's plight and took reasonable steps to deal with her complaints. Even if other steps could have been taken to address claimant's concerns, the ESB's determination that claimant acted unreasonably by quitting her job given all of the circum-

stances then present is entitled to deference. See *id.* (reiterating that when findings are supported by evidence, Supreme Court defers to ESB's decision on whether claimant's decision to quit was reasonable). In sum, the ESB's determination that claimant left her job for reasons not attributable to her employer must be sustained.

*Affirmed.*

¶ 7. **Johnson, J.,** dissenting. The majority's cramped view of the unemployment statute and our decision in *Turco v. Department of Employment Security*, 141 Vt. 135, 446 A.2d 345 (1982), results in an unfair denial of unemployment benefits to an employee who chose to leave her job rather than continue in an intolerable workplace environment. The key fact that compels unemployment in this case is that the employer, an office of the Defender General, had long-standing knowledge of the offending supervisor's conduct, acknowledged that the supervisor was a problem, but failed and refused to take adequate steps to remedy the problems created by the supervisor in the work environment. Upholding the denial of benefits in this circumstance distorts the purpose of unemployment, which is to be liberally construed to support employees who are no longer working due to circumstances beyond their control. *Lane v. Dep't of Employment Sec.*, 134 Vt. 9, 10-11, 347 A.2d 454, 455 (1975) ("The complex pattern of the whole statute is one of compensation for involuntary unemployment, with disqualification and penalties where the unemployment is due to choice or fault."). I respectfully dissent.

¶ 8. After three-and-a-half years of employment as a secretary at the Bennington County Public Defender's Office, claimant resigned in 2004 due to a hostile work environment created by her direct supervisor. The public defender had knowledge of the supervisor's conduct

and the detrimental effect it had on claimant as early as 2003, when claimant formally complained and indicated her intent to resign if the supervisor's conduct continued. At that time, she was told to work it out with her supervisor. She did as she was told and matters improved for awhile. The public defender was aware, however, that the supervisor continued to create a difficult working environment even after he had spoken with the supervisor after claimant's 2003 complaint.

¶ 9. Despite this knowledge, when claimant formally complained a year later, the day after she had been the target of the supervisor's rage, the public defender gave claimant three options, two of which placed the burden on the employee to take steps to resolve the problem, and the third promised no immediate help for the situation. As a result, claimant resigned.

¶ 10. The legal issue is whether claimant quit for reasons not attributable to her employer. Because the employer offered three inadequate options to the employee, and claimant made a different choice, the majority upholds the ESB's conclusion that claimant willingly chose to resign. The majority's decision rests on its interpretation of *Turco*, which it reads as barring a claimant from unemployment compensation if the employer does "anything" to address an employee's work-related problems. In *Turco* we held that the claimant was entitled to unemployment compensation because the employer did nothing to remedy the claimant's situation. 141 Vt. at 138, 446 A.2d at 347. As the majority points out, however, we reached this conclusion by analyzing the totality of the circumstances, including "the history of harassment, [the employer]'s knowledge of it, the employer's failure to address the problem, and the seemingly calloused indifference to claimant's plight." *Id.* Therefore, *Turco* does not limit this

Court from finding an employer's actions to be so inadequate that a claimant's decision to quit work is justified under the statute.

¶ 11. None of the options the public defender presented to claimant was reasonable in light of the problem presented. First, the public defender advised the employee to ·file a grievance with the Vermont State Employees Association (VSEA). But the problem as reflected by the hearing officer's findings of fact relates to the conduct of the supervisor, who was frequently rude and nasty to others. The public defender did not dispute that the supervisor was a problem. He was well aware of this fact because he had reprimanded her on a prior occasion for offending a judge, going so far as to require her to send a letter of apology to the judge. Thus, this was not a personal conflict that existed exclusively between the supervisor and the claimant, nor one in which the employer disputed that the supervisor was a problem in the office. In either of those situations, it might have been reasonable to ask the employee to take her issue to the VSEA.

¶ 12. Nor was it reasonable to ask claimant, a clerical employee, to go to the Defender General's Office and complain about her immediate supervisor, because the public defender in charge of the office refused to address the problem in a timely fashion. This was a brush-off that claimant rightly perceived was likely to result in even greater harassment from her supervisor.

¶ 13. The third option, that the public defender would address the issue during an annual performance review of the supervisor in two weeks, promised little hope of a resolution given the amount of attention that the public defender had been willing to give to the situation in the past. Again, *Turco* requires us to look at the context in which these long-standing problems were occurring. Although the public defender was entitled to handle or

not handle the personnel problem as he saw fit, that is a different question from whether claimant was entitled, at some point, to hit her limit with the employer and leave, without suffering a loss of benefits. Asking claimant to exhaust all options proffered by the employer, when none had any chance of resolving an immediate problem, is unreasonable as a matter of law. See *In re City of Franklin*, 485 A.2d 295, 298 (N.H. 1984) (interpreting a nearly identical statute and holding that claimants are not required to exhaust all available remedies within the employer's organization before terminating employment on account of the employer, but requiring claimants to show under broader reasonable-person test that circumstances warranted termination); see also N.H. Rev. Stat. Ann. § 282-A:32(I)(a) (2005); N.H. Code Admin. R. Ann. [Emp. Sec.] 503.01 (2005).

¶ 14. Moreover, the majority's decision places an unreasonable burden on the claimant to resolve a workplace problem that, based on the findings, was not of her own making and not within her control. The majority upholds the ESB's decision on the standard of review, which is deferential to the Department of Employment Security. But the ESB is also bound by *Turco*, and by the liberal statutory construction in favor of benefits. Considering all of the findings and discussion in the hearing officer's decision, subsequently upheld by the ESB, the decision is an unreasonable interpretation of the law. Claimant should be entitled to unemployment compensation under 21 V.S.A. § 1344(a)(2)(A).