## Eric Piper v. Department of Labor (Mike's Electric, Inc., Employer)

[22 A.3d 438]

No. 10-120

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed March 18, 2011

*Eric Piper*, Pro Se, Derby, Plaintiff-Appellant.

*Dirk Anderson*, Montpelier, for Defendant-Appellee.

¶ 1. **Dooley, J.** Claimant appeals from a decision of the Employment Security Board denying his claim for unemployment benefits on the ground that he refused suitable work without good cause. We reverse.

¶ 2. Claimant had previously worked for employer, Mike's Electric, but was laid off and filed a claim for unemployment compensation benefits in January 2009. Claimant lives in Derby, but testified that he worked at various job sites for employer around Vermont. Some of the work sites, such as Jay, were close to his home, but others, including Springfield and Brattleboro, were a two to two-and-a-half hour drive away, by claimant's estimate. Claimant testified that, for the more distant jobs, employer would pay for his travel time and overnight stays at motels.

¶ 3. In early September 2009, employer offered claimant an opportunity to work as an electrical helper on a job site in Albany, New York, approximately five hours from claimant's home. Claimant refused the offer, and a Department of Labor claims adjudicator determined that he had refused suitable work without good cause, which required him to return an unemployment compensation overpayment of $297 and disqualified him from receiving additional benefits until he had satisfied certain conditions. The adjustor relied on 21 V.S.A. § 1344(a)(2)(C), which disqualifies an applicant from benefits if he or she has failed, without good cause, to accept suitable work when offered.

¶ 4. Claimant appealed the decision to an administrative law judge (ALJ), who held a hearing in November 2009. Claimant testified that his living situation had changed, that he currently lived alone, and that he could no longer be away for up to a week with no one at his property. Following the hearing, the ALJ issued a written decision, reversing the ruling of the claims adjustor. The ALJ found that Albany required a five-hour drive from claimant's home; that in the past, claimant had always worked in Vermont within two-and-a-half hours of his home; that the work in Albany was outside claimant's labor market area; and, consequently, that the job did not constitute "suitable" work.

¶ 5. Employer appealed the ALJ's decision to the Board, which held a hearing in January 2010 and issued a written ruling the following month. Although the Board stated in its notice of hearing that it would not take new evidence — and the counsel to the Board reiterated that position at the start of the hearing — the Board took testimony from the owner of the company for which claimant had worked and which had offered him the job that he refused. The Board reversed the ALJ. It first accepted the ALJ's findings of fact and then made additional findings. In these

findings, it observed that claimant had previously worked for employer at remote job sites and received lodging and travel reimbursement. It further found that claimant refused employer's job offer because he did not want to leave his home for a week at a time. The Board concluded that the Albany site, while more distant, did not impose a significantly different or unreasonable burden on claimant; that claimant refused the job because he did not want to leave home for a week and not because of a change in the conditions of employment; and that industrial work in rural areas typically requires lengthy travel distances. The Board then reached its overall conclusion that, absent a showing that employer would no longer provide travel pay and lodging, there was no basis to deem the work unsuitable or unreasonable. The Board thus reinstated the claims adjustor's original decision. This appeal followed.

¶ 6. In his two-page pro se appeal, claimant appears to raise issues unrelated to the precise question of whether the work in New York was suitable, including the reason for his failure to appear for the Board hearing, the quality of his work for employer, and employer's requirement that he attend training classes. As discussed below, claimant was responding to "evidence" given at the Board hearing by the owner of the employer. None of these issues is developed sufficiently to determine their relevance to the Board's ruling or to address them on appeal. As to the Board's decision itself, claimant asserts that the job in Albany did not represent suitable work because it was three to five hours from his home and posed an unreasonable burden.

¶ 7. Our review of Board decisions is limited. We will affirm the Board's findings if they have any "credible evidence to support them." *Demar v. Dep't of Labor*, 2010 VT 69, ¶ 7, 188 Vt. 577, 6 A.3d 695 (mem.) (quotation omitted). We will uphold the conclusions if they are supported by the findings. *Lynch v. Dep't of Emp't & Training*, 2005 VT 114, ¶ 4, 179 Vt. 542, 890 A.2d 93 (mem.). The determination of whether the proffered employment is "suitable," the primary question before us, is a matter within the Board's expertise. See *Lincoln v. Dep't of Emp't & Training*, 156 Vt. 316, 322, 592 A.2d 885, 889 (1991) (noting that Board concluded employer did not offer suitable work comparable to claimant's earlier employment and employer failed to demonstrate "why the Board's view of the disparity — a matter within its expertise — should be overturned on appeal"). The burden to

show that work offered to him is not suitable is on the claimant. *Martin v. Dep't of Emp't Sec.*, 138 Vt. 475, 477, 417 A.2d 932, 934 (1980).

¶ 8. This case is governed by two interrelated subsections of the unemployment compensation ·statutes. A claimant is disqualified from receipt of unemployment compensation if the claimant "has failed, without good cause, . . . to accept suitable work when offered him." 21 V.S.A. § 1344(a)(2)(C). The second subsection is used to determine if work is "suitable":

> (D) In determining whether or not any work or employment is suitable for an individual for purposes of this subdivision, the commissioner shall consider the degree of risk involved to his ·or her health, safety and morals, his or her physical fitness and prior training, his or her experience and prior earnings, his or her length of unemployment and prospects for securing local work in his or her customary occupation, and the distance of the available work from his or her residence.

*Id.* § 1344(a)(2)(D). The facts of the case present two issues: (1) whether the work offered to claimant was suitable in view of the fact that it was located in Albany, New York; and (2) whether claimant had good cause for refusing the job offered to him. The ALJ decided the claim under the suitable work requirement holding that the Albany job was not suitable because it "is well outside the claimant's labor market area," the travel time was five hours, and claimant never had to travel that far for work in the past. Although the Board stated that claimant refused an offer of suitable work, the only reason given in the decision is that "[i]ndustrial or heavy construction work in a rural state customarily requires lengthy travel distances."

¶ 9. The case is also governed generally by our decision in *Palucci v. Department of Employment Security*, 135 Vt. 156, 376 A.2d 14 (1977). In *Palucci*, an unemployed restaurant waitress appealed a decision that she had refused an offer of waitress work without good cause. She lived in the City of Rutland, and the offer was for a job in an adjoining town, seven miles away. She refused the job because she had no transportation to reach the job and public transportation was not available. Similar to this case, the

referee[1] found that her labor market area was the City of Rutland, and because the job was outside the labor market, it was not suitable. The Board reversed, holding that the neighboring town was within the Rutland labor market and claimants were expected to furnish their own transportation to work. This Court reversed the Board because the Board extended the claimant's labor market area without an evidentiary basis and found suitable a job that was outside the labor market area. *Id.* at 157-58, 376 A.2d at 16.

■ ■ ¶ 10. Central to the *Palucci* decision was our use of the "labor market area" concept:

> "Since, under unemployment compensation laws, it is the availability of an individual that is required to be tested, the labor market must be described in terms of the individual. A labor market for an individual exists where there is a market for the type of services which he offers in the geographical area in which he offers them. 'Market' in this sense does not mean that job vacancies must exist; the purpose of unemployment compensation is to compensate for the lack of appropriate job vacancies. It means only that the type of services which an individual is offering is generally performed in the geographical area in which he is offering them."

*Id.* at 158, 376 A.2d at 16 (quoting L. Freeman, *Able to Work and Available for Work*, 55 Yale L.J. 123, 124 (1945)). This Court held that, under the above definition, the City of Rutland was the claimant's labor market area and that extending her labor market to the nearby town without an evidentiary basis was error. *Id.* The Court recognized that in some instances the labor market area alone would not define what work was suitable, and thus, we held that a person of highly specialized skills would have to accede to a labor market that included employers utilizing those skills. The Court continued, however, that the City of Rutland was not "an unreasonably restricted area of availability for one in [the] occupation [of waitress]." *Id.*

¶ 11. We note that the issues used in defining suitable work in *Palucci* reflect the statutory definition of "suitable." The statute requires that we look at suitability on an individual basis and that

---

[1] The current ALJ position was formerly called a referee.

we look at a claimant's "length of unemployment," "prospects for securing local work in his or her customary occupation," and "the distance of the available work from his or her residence." 21 V.S.A. § 1344(a)(2)(D). *Palucci* explains how we should consider these factors.

¶ 12. The ALJ decision followed the holding of *Palucci*. Although the ALJ did not make a finding on this point, the evidence was undisputed that claimant was not a highly skilled employee. The record indicates that he had worked as an "electrical helper." In fact, one of his disputes with his former employer involved the employer's desire that claimant enter an apprentice electrician program to upgrade his skills. Claimant had been unemployed from full-time work for a relatively short period of time. Although the ALJ did not precisely define claimant's labor market area, he made the finding that Albany, New York, was "well outside" that area. Based on the evidence and that finding, the ALJ properly concluded that claimant did not refuse an offer of suitable work.

¶ 13. The Board's decision does not reflect the holding of *Palucci*; in fact, it makes the exact same error that the Board made in that case. Most of the Board's conclusions involve whether claimant had good cause for refusing the job offer, an analysis that did not respond to the holding of the ALJ. Further, the Board was particularly influenced by the fact that the job offer came from the same employer that had previously employed claimant and laid him off, and it compared the work conditions of the offered job with the conditions of the jobs claimant held in the past. The statutory definition of suitable work does not become different because the job offer comes from a former employer. We do not agree that a particular job necessarily becomes suitable because claimant was in the position to accept comparable conditions and restrictions in the past.

¶ 14. The Board's fundamental error was in speculating that the work that claimant was qualified to perform "requires lengthy travel distances." No evidence supported this finding, and the ALJ had made a labor market area finding directly to the contrary, at least with respect to a travel distance as far as Albany. The Board's decision specifically adopts the findings of the ALJ. Thus, as in *Palucci*, the Board erred by finding a larger labor market area than the evidence supported.

■ ¶ 15. It is apparent from the record that the error in this case arose because the Board deviated from its procedure with respect to the taking of new evidence. The governing statute allows the Board to decide the appeal "solely on the basis of evidence in the record transferred to it by the [ALJ], or upon the basis of evidence in the record and such additional evidence as it may direct to be taken." 21 V.S.A. § 1349. The statute gives the Board the option of taking additional evidence itself or of referring the matter again to the ALJ for the taking of additional evidence. See *Davis v. Dep't of Emp't Sec.*, 140 Vt. 269, 275, 438 A.2d 375, 379 (1981); *Frye v. Dep't of Emp't Sec.*, 134 Vt. 131, 133-34, 353 A.2d 339, 341 (1976). As explained in *Frye*, under Board rules still in effect when the present case was heard, the Board can only choose to take new evidence, if at all, by remand to the ALJ and not directly. *Frye*, 134 Vt. at 134, 353 A.2d at 341. Thus, the Board's rules make clear that it does not take additional evidence but will hear argument from one or more of the parties to the appeal. Rules of the Employment Security Board, Rule 17E, 3 Code of Vt. Rules 24 005 001-11, available at http://www.michie.com/vermont. That policy is reiterated in the notice of the Board hearing[2] and the explanations of Board procedure provided to claimants and employers. See Vt. Dep't of Labor, Claimant Handbook, Vermont Unemployment Insurance 7, http://labor.vermont.gov/Portals/0/UI/B-11%20Claimant%20Handbook.pdf; Vt. Dep't of Labor, Unemployment Insurance Program Appeal Information: Appeals to the Employment Security Board, http://labor.vermont.gov/InfoCenter/Appeals/UIProgramAppealInfo/tabid/423/Default.aspx. In this case, this limitation was explained at the beginning of both the ALJ and the Board hearing.

¶ 16. The proper procedure was not followed in this case. Claimant appeared before the ALJ, but there were no other witnesses, and the decision was based solely on claimant's testimony. The employer appealed to the Board, and its owner[3]

---

[2] The notice of the hearing in this case said: "If you attend the Board hearing, you will be permitted to present oral and/or written argument as to why you think the testimony and evidence presented at the [ALJ] hearing supports your position . . . . [Y]ou will *not* be permitted to present *any* new or additional testimony or evidence, since the Board does not take testimony or evidence at its hearings."

[3] The person who appeared personally was Michael Pappalardo, apparently the Mike of Mike's Electric, Inc. He is identified in the cover sheet to the transcript as Michael Pappalardo, Esq., but there is no other indication he is a lawyer.

appeared personally before the Board. Claimant did not appear at the Board hearing. At the start of the Board hearing, the owner stated that he, personally, had received no notice of the ALJ hearing because the written notice went to a general manager who was fired shortly after the notice was received. The owner then gave a factual statement about what occurred with respect to the offer of employment to claimant, followed by eight transcript pages of responses to questions from the Board Chair and its counsel.[4] While the Board professed to rely on the factual findings of the ALJ, it is clear that it treated the owner's statements as evidence and rendered its decision based on that evidence.[5]

¶ 17. We stress to the Board that the procedure it employed would be grounds for a new hearing, even had the evidence supported its ultimate decision. Claimant is entitled to rely on the Board's rules and the representation, made in numerous ways, that no evidence would be taken by the Board. Not only was that representation dishonored, but the evidence came in ex parte and the witness was not even sworn. The ex parte statements clearly affected the result.

*Reversed. The case is remanded for the award of such benefits as claimant would have received in the absence of the disqualification.*

---

[4] The owner was not sworn in as a witness.

[5] The Board made additional findings ostensibly based on the evidence before the ALJ. They are clearly erroneous if based solely on that evidence. For example, the Board found that when claimant had to travel significant distances to work, "the employer would either provide transportation or reimburse the claimant's mileage." At the ALJ hearing, claimant was asked "If you drove, did you get paid mileage?" Claimant answered, "No, I got paid just hourly travel." It is apparent that the finding is based on the statement of the owner.

Claimant appealed pro se to this Court. Much of his stated grounds for appeal involved refutations of the statements made by the owner. We recognize the circumstances that caused this response, but for the same reason that taking of testimony by the Board was error, consideration of claimant's refutation statements would be error.