2011 VT 32



Piper v. Dept. of Labor (Mike’s
Electric, Inc., Employer)

 

2011 VT 32

 

[Filed 18-Mar-2011]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions, Vermont Supreme Court, 109 State Street, Montpelier, Vermont05609-0801 of any errors in order
that corrections may be made before this opinion goes to press.

 

 


 2011 VT 32
 
  


 No. 2010-120
 
  


 Eric Piper
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
      v.
 
 
 Employment Security Board
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Department of Labor
 (Mike’s Electric, Inc., Employer)
 
 
 November Term, 2010
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Patricia
 Moulton Powden, Chair
 
 
  
 
 Eric Piper, Pro Se, Derby, Plaintiff-Appellant.

 

Dirk Anderson, Montpelier, for Defendant-Appellee.

 

 

PRESENT:  Reiber, C.J.,
Dooley, Johnson, Skoglund and Burgess, JJ.

 

 

¶ 1.            
DOOLEY, J.  Claimant appeals from a decision of the
Employment Security Board denying his claim for unemployment benefits on the
ground that he refused suitable work without good cause.  We reverse.

¶ 2.            
Claimant had previously worked for employer, Mike’s Electric, but was
laid off and filed a claim for unemployment compensation benefits in January
2009.  Claimant lives in Derby, but testified that he worked at various
job sites for employer around Vermont.  Some of the work sites, such as
Jay, were close to his home, but others, including Springfield and Brattleboro,
were a two to two-and-a-half hour drive away, by claimant’s estimate. 
Claimant testified that, for the more distant jobs, employer would pay for his
travel time and overnight stays at motels.  

¶ 3.            
In early September 2009, employer offered claimant an opportunity to
work as an electrical helper on a job site in Albany, New York, approximately
five hours from claimant’s home.  Claimant refused the offer, and a
Department of Labor claims adjudicator determined that he had refused suitable
work without good cause, which required him to return an unemployment
compensation overpayment of $297 and disqualified him from receiving additional
benefits until he had satisfied certain conditions.  The adjustor relied
on 21 V.S.A. § 1344(a)(2)(C), which disqualifies an applicant from
benefits if he or she has failed, without good cause, to accept suitable work
when offered. 

¶ 4.            
Claimant appealed the decision to an administrative law judge (ALJ), who
held a hearing in November 2009.  Claimant testified that his living
situation had changed, that he currently lived alone, and that he could no
longer be away for up to a week with no one at his property.  Following
the hearing, the ALJ issued a written decision, reversing the ruling of the
claims adjustor.  The ALJ found that Albany required a five-hour drive
from claimant’s home; that in the past, claimant had always worked in Vermont
within two-and-a-half hours of his home; that the work in Albany was outside
claimant’s labor market area; and, consequently, that the job did not
constitute “suitable” work.  

¶ 5.            
Employer appealed the ALJ’s decision to the
Board, which held a hearing in January 2010 and issued a written ruling the
following month.  Although the Board stated in its notice of hearing that
it would not take new evidence—and the counsel to the Board reiterated that
position at the start of the hearing—the Board took testimony from the owner of
the company for which claimant had worked and which had offered him the job
that he refused.  The Board reversed the ALJ.  It first accepted the ALJ’s findings of fact and then made additional
findings.  In these findings, it observed that claimant had previously worked
for employer at remote job sites and received lodging and travel
reimbursement.  It further found that claimant refused employer’s job
offer because he did not want to leave his home for a week at a time.  The
Board concluded  that the Albany site, while more distant, did not impose
a significantly different or unreasonable burden on claimant; that claimant
refused the job because he did not want to leave home for a week and not
because of a change in the conditions of employment; and that industrial work
in rural areas typically requires lengthy travel distances.  The Board
then reached its overall conclusion that, absent a showing that employer would
no longer provide travel pay and lodging, there was no basis to deem the work
unsuitable or unreasonable.  The Board thus reinstated the claims
adjustor’s original decision.  This appeal
followed.        

¶ 6.            
In his two-page pro se appeal, claimant appears to raise issues
unrelated to the precise question of whether the work in New York was suitable,
including the reason for his failure to appear for the Board hearing, the
quality of his work for employer, and employer’s requirement that he attend
training classes.  As discussed below, claimant was responding to
“evidence” given at the Board hearing by the owner of the employer.  None
of these issues is developed sufficiently to determine their relevance to the
Board’s ruling or to address them on appeal.  As to the Board’s decision
itself, claimant asserts that the job in Albany did not represent suitable work
because it was three to five hours from his home and posed an unreasonable
burden.  

¶ 7.            
Our review of Board decisions is limited.  We will affirm the
Board’s findings if they have any “credible evidence to support them.”
  Demar v. Dep’t of Labor,
2010 VT 69, ¶  7, ___ Vt. ___, 6 A.3d 695 (mem.)
(quotation omitted).  We will uphold the conclusions if they are supported
by the findings.  Lynch v. Dep’t of Emp’t
& Training, 2005 VT 114, ¶ 4, 179 Vt. 542, 890 A.2d 93 (mem.).  The determination of whether the proffered
employment is “suitable,” the primary question before us, is a matter within
the Board’s expertise.  See Lincoln v. Dep’t of Emp’t
& Training, 156 Vt. 316, 322, 592 A.2d 885, 889 (1991) (noting that
Board concluded employer did not offer suitable work comparable to claimant’s
earlier employment and employer failed to demonstrate “why the Board’s view of
the disparity—a matter within its expertise—should be overturned on
appeal”).  The burden to show that work offered to him is not suitable is
on the claimant.  Martin v. Dep’t of Emp’t
Sec., 138 Vt. 475, 477, 417 A.2d 932, 934 (1980).

¶ 8.            
This case is governed by two interrelated subsections of the unemployment
compensation statutes.  A claimant is disqualified from receipt of
unemployment compensation if the claimant “has failed, without good cause, . .
. to accept suitable work when offered him.”  21 V.S.A. §
1344(a)(2)(C).  The second subsection is used to determine if work is
“suitable”:

 
(D) In determining whether or not any work or employment is suitable for an
individual for purposes of this subdivision, the commissioner shall consider
the degree of risk involved to his or her health, safety and morals, his or her
physical fitness and prior training, his or her experience and prior earnings,
his or her length of unemployment and prospects for securing local work in his
or her customary occupation, and the distance of the available work from his or
her residence.

 

Id. §
1344(a)(2)(D).  The facts of the case present two issues: (1) whether the
work offered to claimant was suitable in view of the fact that it was located
in Albany, New York; and (2) whether claimant had good cause for refusing
the job offered to him.  The ALJ decided the claim under the suitable work
requirement holding that the Albany job was not suitable because it “is well
outside the claimant’s labor market area,” the travel time was five hours, and
claimant never had to travel that far for work in the past.  Although the
Board stated that claimant refused an offer of suitable work, the only reason
given in the decision is that “[i]ndustrial
or heavy construction work in a rural state customarily requires lengthy travel
distances.”  

¶ 9.            
The case is also governed generally by our decision in Palucci v. Department of Employment Security,
135 Vt. 156, 376 A.2d 14 (1977).  In Palucci,
an unemployed restaurant waitress appealed a decision that she had refused an
offer of waitress work without good cause.  She lived in the City of
Rutland, and the offer was for a job in an adjoining town, seven miles
away.  She refused the job because she had no transportation to reach the
job and public transportation was not available.  Similar to this case,
the referee[1]
found that her labor market area was the City of Rutland, and because the job was outside the
labor market, it was not suitable.  The Board reversed, holding that the
neighboring town was within the Rutland labor market and claimants were
expected to furnish their own transportation to work.  This Court reversed
the Board because the Board extended the claimant’s labor market area without
an evidentiary basis and found suitable a job that was outside the labor market
area.  Id. at 157-58, 376 A.2d at 16.

¶ 10.        
Central to the Palucci decision was our
use of the “labor market area” concept:

 
“Since, under unemployment compensation laws, it is the availability of an
individual that is required to be tested, the labor market must be described in
terms of the individual.  A labor market for an individual exists where
there is a market for the type of services which he offers in the geographical
area in which he offers them.  ‘Market’ in this sense does not mean that
job vacancies must exist; the purpose of unemployment compensation is to
compensate for the lack of appropriate job vacancies.  It means only that
the type of services which an individual is offering is generally performed in
the geographical area in which he is offering them.”

 

Id. at 158, 376 A.2d at 16
(quoting L. Freeman, Able to Work and Available for Work, 55 Yale L.J.
123, 124 (1945)).  This Court held that, under the above definition, the
City of Rutland was the claimant’s labor market area and that extending her
labor market to the nearby town without an evidentiary basis was error.  Id. 
The Court recognized that in some instances the labor market area alone would
not define what work was suitable, and thus, we held that a person of highly
specialized skills would have to accede to a labor market that included
employers utilizing those skills.  The Court continued, however, that the
City of Rutland was not “an unreasonably restricted area of availability for one
in [the] occupation [of waitress].”  Id.  

¶ 11.        
We note that the issues used in defining suitable work in Palucci reflect the statutory definition of
“suitable.”  The statute requires that we look at suitability on an
individual basis and that we look at a claimant’s “length of unemployment,”
“prospects for securing local work in his or her customary occupation, ” and
“the distance of the available work from his or her residence.”  21 V.S.A.
§ 1344(a)(2)(D).  Palucci explains how we
should consider these factors.

¶ 12.        
The ALJ decision followed the holding of Palucci. 
Although the ALJ did not make a finding on this point, the evidence was
undisputed that claimant was not a highly skilled employee.  The record
indicates that he had worked as an “electrical helper.”  In fact, one of
his disputes with his former employer involved the employer’s desire that
claimant enter an apprentice electrician program to upgrade his skills. 
Claimant had been unemployed from full-time work for a relatively short period
of time.  Although the ALJ did not precisely define claimant’s labor
market area, he made the finding that Albany, New York, was “well outside” that
area.  Based on the evidence and that finding, the ALJ properly concluded
that claimant did not refuse an offer of suitable work.

¶ 13.        
The Board’s decision does not reflect the holding of Palucci;
in fact, it makes the exact same error that the Board made in that case. 
Most of the Board’s conclusions involve whether claimant had good cause for
refusing the job offer, an analysis that did not respond to the holding of the
ALJ.  Further, the Board was particularly influenced by the fact that the
job offer came from the same employer that had previously employed claimant and
laid him off, and it compared the work conditions of the offered job with the
conditions of the jobs claimant held in the past.  The statutory
definition of suitable work does not become different because the job offer
comes from a former employer.  We do not agree that a particular job
necessarily becomes suitable because claimant was in the position to accept
comparable conditions and restrictions in the past.

¶ 14.        
The Board’s fundamental error was in speculating that the work that
claimant was qualified to perform “requires lengthy travel distances.”  No
evidence supported this finding, and the ALJ had made a labor market area
finding directly to the contrary, at least with respect to a travel distance as
far as Albany.  The Board’s decision specifically adopts the findings of
the ALJ.  Thus, as in Palucci, the Board
erred by finding a larger labor market area than the evidence supported.

¶ 15.        
It is apparent from the record that the error in this case arose because
the Board deviated from its procedure with respect to the taking of new
evidence.  The governing statute allows the Board to decide the appeal
“solely on the basis in the record transferred to it by the [ALJ], or upon the
basis of the evidence in the record and such additional evidence as it may direct
to be taken.”  21 V.S.A. § 1349.  The statute gives the Board the
option of taking additional evidence itself or of referring the matter again to
the ALJ for the taking of additional evidence.  See Davis v. Dep’t of Emp’t Sec., 140 Vt. 269, 275, 438 A.2d 375, 379 (1981);
Frye v. Dep’t of Emp’t Sec., 134 Vt. 131,
133-34, 353 A.2d 339, 341 (1976).  As explained in Frye, under
Board rules still in effect when the present case was heard, the Board can only
choose to take new evidence, if at all, by remand to the ALJ and not
directly.  Frye, 134 Vt. at 134, 353 A.2d at 341.  Thus, the
Board’s rules make clear that it does not take additional evidence but will
hear argument from one or more of the parties to the appeal.  Rules of the
Employment Security Board, Rule 17E, 3 Code of Vt. Rules 24 005 001-11,
available at http://www.michie.com/‌vermont.  That policy is
reiterated in the notice of the Board hearing[2] and the explanations of Board procedure
provided to claimants and employers.  See Vt. Dep’t of Labor, Claimant
Handbook, Vermont Unemployment Insurance 7, http://labor.vermont.gov‌/Portals/0/UI/B-11%20Claimant%20Handbook.pdf;
Vt. Dep’t of Labor, Unemployment Insurance Program Appeal Information: Appeals
to the Employment Security Board, http://labor.vermont.gov‌/Info‌Center/Appeals/UIProgramAppealInfo/tabid/423‌/Default.aspx. 
In this case, this limitation was explained at the beginning of both the ALJ
and the Board hearing.  

¶ 16.        
The proper procedure was not followed in this case.  Claimant
appeared before the ALJ, but there were no other witnesses, and the decision
was based solely on claimant’s testimony.  The employer appealed to the
Board, and its owner[3]
appeared personally before the Board.  Claimant did not appear at the
Board hearing.  At the start of the Board hearing, the owner stated that
he, personally, had received no notice of the ALJ hearing because the written
notice went to a general manager who was fired shortly after the notice was
received.  The owner then gave a factual statement about what occurred
with respect to the offer of employment to claimant, followed by eight
transcript pages of responses to questions from the Board Chair and its
counsel.[4] 
While the Board professed to rely on the factual findings of the ALJ, it is
clear that it treated the owner’s statements as evidence and rendered its
decision based on that evidence.[5]

¶ 17.        
We stress to the Board that the procedure it employed would be grounds
for a new hearing, even had the evidence supported its ultimate decision. 
Claimant is entitled to rely on the Board’s rules and the representation, made
in numerous ways, that no evidence would be taken by the Board.  Not only
was that representation dishonored, but the evidence came in ex parte and the
witness was not even sworn.  The ex parte statements clearly affected the
result.

Reversed.  The case is
remanded for the award of such benefits as claimant would have received in the
absence of the disqualification.

 

 


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  











[1] 
The current ALJ position was formally called a referee. 





[2] 
The notice of the hearing in this case said: “If you attend the Board hearing,
you will be permitted to present oral and/or written argument as to why you think
the testimony and evidence presented at the [ALJ] hearing supports your
position . . . . [Y]ou will not be permitted
to present any new or additional testimony or evidence, since the Board
does not take testimony or evidence at its hearings.”  





[3] 
The person who appeared personally was Michael Pappalardo,
apparently the Mike of Mike’s Electric, Inc.  He is identified in the
cover sheet to the transcript as Michael Pappalardo,
Esq., but there is no other indication he is a lawyer.

 





[4] 
The owner was not sworn in as a witness.

 





[5] 
The Board made additional findings ostensibly based on the evidence before the
ALJ.  They are clearly erroneous if based solely on that evidence. 
For example, the Board found that when claimant had to travel significant
distances to work, “the employer would either provide transportation or
reimburse the claimant’s mileage.”  At the ALJ hearing, claimant was asked
“If you drove, did you get paid mileage?”  Claimant answered, “No, I got
paid just hourly travel.”  It is apparent that the finding is based on the
statement of the owner.

 

Claimant appealed pro se to this Court.  Much of
his stated grounds for appeal involved refutations of the statements made by
the owner.  We recognize the circumstances that caused this response, but
for the same reason that taking of testimony by the Board was error,
consideration of claimant’s refutation statements would be error.