# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2016-0308, <u>Appeal of Elizabeth E. Connors</u>, the court on April 7, 2017, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The claimant, Elizabeth E. Connors, appeals the decision of the New Hampshire Department of Employment Security (DES) Appellate Board that sustained the decision of the DES Appeal Tribunal (tribunal) denying her claim for unemployment compensation benefits. <u>See</u> RSA 282-A:32, I(a) (Supp. 2016). The claimant argues that the tribunal erred in concluding that, although the reason for her resignation was related to her employment, her decision to terminate her employment was not reasonable under the circumstances.

Judicial review of DES decisions is governed by RSA 282-A:67 (2010). <u>Appeal of Mullen</u>, 169 N.H. 392, 306 (2016). We will affirm the DES's decision unless its findings or conclusions were unauthorized, affected by an error of law, or clearly erroneous. <u>Appeal of First Student</u>, 153 N.H. 682, 684-85 (2006). We will not substitute our judgment for that of the tribunal as to the weight of the evidence on questions of fact. <u>Appeal of Mullen</u>, 169 N.H. at 396; RSA 282-A:67, V.

The record shows that the claimant was employed by Phillips Exeter Academy (employer) as a custodian. On February 15, 2015, after approximately a year and a half on the job, the claimant sent an e-mail to the employer's senior human resources partner alleging that her supervisor was "hasseling" her after she sustained a January 11, 2015 workplace injury. The claimant alleged that the supervisor did not believe that she injured her knee at work and would not allow her to follow her doctor's work restrictions. She expressed concern that the supervisor was treating her differently from other custodians, possibly because she is gay. On February 19, 2015, the claimant met with the human resources representative. During the meeting, the claimant expressed concern that her supervisor discussed in the workplace religion, family values, gender roles, and other topics, against her wishes. She also repeated her allegations that the supervisor encouraged her to work beyond her light duty restrictions. The human resources representative advised the claimant that if she felt that anyone was retaliating against her for

raising her concerns about the supervisor, then she should contact the human resources department.

The employer decided to retain outside legal counsel to conduct an independent investigation of the claimant's complaints. The investigator began the investigation on March 9, 2015, and interviewed the claimant, her supervisor, and approximately eight to ten of the claimant's co-workers. Although the investigator completed a draft report the following month, the employer did not meet with the claimant until July, a delay that resulted from a change in school administrators.

In a letter to the claimant dated July 20, 2015, the human resources representative summarized the results of the investigation, and she met with the claimant two days later to discuss the results. Although the investigator did not find that the supervisor had been treating the claimant differently because she was gay, the investigator did find that the supervisor discussed religion and his personal life with employees. The investigator also found that the supervisor treated employees unprofessionally and did a poor job of discussing the claimant's work restrictions with her. Based upon the investigator's findings, the employer demoted the supervisor, removed him from his supervisory position, and placed him on a different shift, so that he would no longer be working with the claimant or the employees who expressed concerns about him to the investigator. During the claimant's July 22, 2015 meeting with the human resources representative, the representative told her that if anyone retaliated against her as a result of the employer's remedial actions, she should report it to the human resources department.

The following month, on August 31, 2015, the claimant sent her letter of resignation to the employer. In her letter, the claimant alleged that she had been experiencing a hostile work environment since the investigation started, and that she had not complained about it because of a lack of confidentiality. The claimant alleged that other employees knew that the supervisor would be demoted before it was announced to the group. She also alleged that she was being shunned by the group, and that her co-workers had been told to avoid her. The claimant wrote that she did not feel confident that the employer could protect her from her former supervisor's retaliation, and that she felt that she had "no option but to resign."

An employee seeking unemployment compensation benefits after voluntarily terminating her employment must show that her decision to resign was related to the employment and was reasonable under the circumstances. Appeal of T & M Associates, 134 N.H. 617, 621 (1991). The tribunal concluded that although the claimant's decision to resign was work-related, it was not reasonable under the circumstances because she did not notify the employer of any ongoing problems during the investigation or after the employer took remedial action. The tribunal further found that if the claimant had notified

2

her employer of any continuing concerns, the employer likely would have investigated any such complaints and taken corrective action.

Our review is confined to the record. See RSA 282-A:67, IV. We will not substitute our judgment for that of the tribunal on questions of fact. See RSA 282-A:67, V. The record supports the tribunal's finding that it was not reasonable for the claimant to conclude that she had "no option but to resign" approximately one month after the employer had reassigned the supervisor as a result of its investigation. After the claimant complained about the supervisor, and again when the supervisor was reassigned, the employer instructed the claimant to report any retaliation to human resources, yet she failed to do so. Based upon this record, we cannot conclude that the tribunal's decision to deny unemployment compensation benefits was unsupported by the record or erroneous as a matter of law. See Appeal of First Student, 153 N.H. at 684-85.

The claimant's remaining arguments raise issues and claims beyond the scope of this appeal and do not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

Dalianis, C.J., and Hicks, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,
Clerk**

3